Henry SALUDES, Appellee,

v.

Evelyn RAMOS, M.D., and Government of the Virgin Islands.

Appeal of GOVERNMENT OF the VIRGIN ISLANDS.

No. 83–3413.

United States Court of Appeals, Third Circuit.

Argued April 27, 1984.

Decided Sept. 28, 1984.

Diane Trace Warlick (argued), Law Offices of R. Eric Moore, Christiansted, St. Croix, for appellant.

Virginia D. Hutch (argued), Loud, Watts & Murnan, Law Offices of Frederick G. Watts, Charlotte Amalie, St. Thomas, V.I., for appellee.

Before SEITZ, GARTH, and HIGGIN-BOTHAM, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The Government of the Virgin Islands, one of two defendants in this malpractice action, appeals from the district court's interlocutory order holding that plaintiff need not comply with the claim filing requirements of the Virgin Islands Tort Claims Act, 33 V.I.C. § 3401 *et seq.* The district court certified the order under 28 U.S.C. § 1292(b), and we granted permission to appeal.

I.

This appeal requires us to consider the relationship between two statutes enacted by the Virgin Islands legislature: the Virgin Islands Tort Claims Act, 33 V.I.C. § 3401 *et seq.* (Equity 1967 & Supp.1983), enacted in 1971, and the Virgin Islands Health Care Provider Malpractice Act, 27 V.I.C. § 166 *et seq.* (Equity Supp.1983), enacted in 1975.

Henry Saludes, plaintiff, allegedly suffered injuries in December 1981 as a result of the malpractice of Dr. Evelyn Ramos, a

physician at the Knud Hansen Memorial Hospital in the Virgin Islands. In compliance with the claim requirements of the Medical Malpractice Act, 27 V.I.C. § 166i(b), Saludes filed a proposed complaint with the Government's Medical Malpractice Action Review Committee in May 1982, prior to commencing his action in the district court. The proposed complaint named as defendants Dr. Ramos and the Government of the Virgin Islands, the owner and operator of the hospital. Dr. Ramos and the Government responded with a proposed answer to the complaint, also as required by the Medical Malpractice Act, 27 V.I.C. § 166i(c). The proposed answer asserted, *inter alia*, the affirmative defense that Saludes had failed to comply with the claim filing requirements of the Tort Claims Act, 33 V.I.C. § 3409.

In November 1982, Saludes filed the present action against Ramos and the Government in the district court.[1] Apparently conceding his failure to comply with the claim filing requirements of the Tort Claims Act, Saludes on the same day filed a motion with the district court to have this failure excused. The asserted ground for the motion was Saludes's good faith belief that compliance with the Medical Malpractice Act made it unnecessary for him to comply with the Tort Claims Act. The district court denied Saludes's motion as "moot" and held that plaintiffs was not required to comply with the Tort Claims Act in his malpractice action against the Government. In so holding, the court overruled its earlier decision in *Davis v. Knud-Hansen Memorial Hospital*, 1978 St. T.Supp. 217 (D.V.I.1978), *reversed on other grounds*, 635 F.2d 179 (3d Cir.1980), which had required a malpractice claimant against the Government to comply with both the Medical Malpractice Act and the Tort Claims Act. We permitted the Government to appeal the district court's

order and must now decide whether the court's ruling on the relationship between these two statutes was correct.[2]

## II.

Before reaching the merits of this appeal we must decide what standard of review to apply. Because the issue is a legal one, we would ordinarily exercise plenary review. Plaintiff argues, however, that a more deferential standard is appropriate. Plaintiff's argument is based on a series of Supreme Court decisions from the 1930s and 1940s in which the Court held that a federal court of appeals reviewing the decision of a territorial appellate court on a matter of territorial law should only reverse if there is "manifest error". *See, e.g., De Castro v. Board of Commissioners*, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384 (1944) (reviewing federal circuit court's affirmance of decision by Puerto Rico Supreme Court). Chief Justice Stone explained the rationale for this deference in his opinion in *De Castro*, stating that a federal appellate court has

> the peculiarly delicate task of examining and appraising the local law in its setting, with the sympathetic disposition to safeguard in matters of local concern the adaptability of the law to local practices and needs. It is one which ordinarily cannot be performed summarily or without full argument and examination of the legal questions involved. But if in the light of such an examination it is found that the rule adopted by the local tribunal is an intelligible one, not shown to be out of harmony with local law or practice, it is not to be rejected because we think a better could have been devised or because we find it out of harmony with our own traditional system of law and statutory construction.

*Id.* at 458–59, 64 S.Ct. at 1125.

Each of the Supreme Court's decisions on this issue has involved a review of a

---

**1.** The record does not reveal the outcome of the proceeding before the Malpractice Review Committee.

**2.** Because plaintiff seeks recovery against Dr. Ramos in the doctor's private capacity, plaintiff

was not required to comply with the Tort Claims Act with regard to that claim. Dr. Ramos is therefore not a party to this appeal, and the action in the district court against Dr. Ramos has been stayed pending our ruling.

decision by an insular court of appeals, either the Hawaii or the Puerto Rico Supreme Court. Both territories, at the time of the decisions, had separate, non-federal judicial systems. Appeals from these courts were taken to the federal courts of appeals. In its *De Castro* decision the Court made clear that its adoption of the deferential standard was based on the need to respect the insular system and its expertise in local law and custom. This deference, according to the Supreme Court, is comparable to the deference paid to the state judicial system by federal courts sitting in diversity. 322 U.S. at 459, 64 S.Ct. at 1125. *See also Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 383, 69 S.Ct. 606, 614, 93 L.Ed. 741 (1949).

In the Virgin Islands, however, there is no separate, insular judicial system. There is a territorial trial court which has exclusive jurisdiction over minor civil and criminal matters, 48 U.S.C. § 1613 (1976); 4 V.I.C. § 75 (Equity Supp.1983), but appeals from this court are to the federal district court, 48 U.S.C. § 1612 (1976); 4 V.I.C. § 33 (Equity Supp.1983). The district court shares original jurisdiction with the territorial court for causes of action which arise under local law and are not committed to the exclusive jurisdiction of the territorial court. 48 U.S.C. § 1612; 4 V.I.C. § 32 (Equity Supp.1983). As a result, it is frequently the district court in the Virgin Islands that serves as the trial court and interprets territorial law in the first instance.

Our court has always applied the legal error standard in reviewing the decisions of the district court of the Virgin Islands on issues of local law. *See, e.g., Silverlight v. Huggins*, 488 F.2d 107 (3d Cir.1973). We recognize that the Court of Appeals for the Ninth Circuit has applied the deferential *De Castro* standard in reviewing the decisions of the Guam district court, a court similar to the Virgin Islands district court. *See, e.g., Laguana v. Guam Visitors Bureau*, 725 F.2d 519, 520–21 (9th Cir.1984) (review of decision of district court of Guam sitting as trial court). We continue to believe, however, that our own standard of review

is the correct one. The district court's reading of local law should be respected, but we will not accord it any greater deference than we would in a diversity action. In the latter type of action, federal appellate courts have traditionally recognized that the district judge's prediction of state law is weighty because of his or her familiarity with the particular jurisdiction. *See, e.g., Bernhardt v. Polygraphic Company of America, Inc.*, 350 U.S. 198, 204, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956). This has not required a different standard of review. *See Compagnie des Bauxites de Guinee v. Insurance Company of North America*, 724 F.2d 369, 371 (3d Cir.1983). We will therefore exercise plenary review in considering the district court's holding in this appeal.

### III.

The question on the merits is a narrow one: whether a plaintiff who seeks to file an action against the Government of the Virgin Islands for the alleged malpractice of one of the Government's employees must comply only with the claim filing requirements of the Medical Malpractice Act, 27 V.I.C. § 166i, or must also comply with claim requirements of the Tort Claims Act, 33 V.I.C. §§ 3409, 3410. The district court required compliance only with the Medical Malpractice Act, finding that it had implicitly repealed conflicting provisions in the Tort Claims Act. The court based its holding on the rule of statutory construction that, when two statutes address the same subject matter and are incompatible, the later and more specific of the two should govern. The ultimate issue, of course, is the intent of the legislature. We must therefore examine the language, history, and functions of the two statutes to determine whether there is sufficient evidence to conclude that the Virgin Islands legislature, in enacting the Medical Malpractice Act, intended to repeal provisions of the Tort Claims Act.

Section 2(b) of the Revised Organic Act of 1954 states that "no tort action shall be

brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature ...." 48 U.S.C. § 1541(b). In 1971 the Virgin Islands legislature enacted the Tort Claims Act, 33 V.I.C. § 3401 *et seq.* Section 3408 of the Act conditionally waives the Government's immunity from tort liability and states that the Government "consents to have its liability determined *in accordance with the same rules of law as applied to actions in the courts of the Virgin Islands against individuals and corporations; Provided, That the claimant complies with the provisions of this chapter.*" 3 V.I.C. § 3408 (emphasis added).

The "provisions of this chapter" with which we are here concerned are the claim filing requirements in 33 V.I.C. §§ 3409, 3410. Section 3409 states that "[n]o judgment shall be granted in favor of any claimant unless such claimant shall have complied with the provisions of this section applicable to his claim ...." 33 V.I.C. § 3409. The section requires that a personal injury claimant file either a "claim" or a "notice of intention to file a claim" within ninety days of the claim's accrual. *Id.* § 3409(c). If the claimant chooses to file a notice of intention, he must file his claim within two years of the accrual date. *Id.* In the event the claimant fails to file either a claim or a notice of intention within ninety days, he may file a motion with the court within two years of the accrual date seeking permission to file a late claim. An affidavit and copy of the proposed claim must accompany this motion. The affidavit must establish that the claimant had a "reasonable excuse" for failing to comply, and that the Government had "actual knowledge of the facts constituting the claim" within the original ninety day time period. *Id.* § 3409. The court may, in its discretion, grant the motion unless it finds that the Government has been "substantially prejudiced" by the untimely filing. *Id.*

Section 3410 states that the claim or notice of intention must be filed with the Office of the Governor, and a copy served upon the Attorney General. A notice of intention must state the time and place of the tort and the nature of the claim to be asserted. The claim must set forth the same information, plus "items of damage or injuries claimed to have been sustained and the total sum claimed." Both the notice and the claim must be verified. 33 V.I.C. § 3410.

In contrast with the Tort Claims Act, the Medical Malpractice Act does not explicitly concern itself with actions against the Government. Instead, it governs malpractice actions against "health care providers." The Act is applicable to claims against the Government only because the Government owns and operates two public hospitals in the Virgin Islands. 27 V.I.C. § 166(d), (e).

The Medical Malpractice Act provides that a claimant, before commencing his action in court, must file a "proposed complaint" with the Medical Malpractice Committee. The Committee sends copies of the complaint to each of the health care providers named as defendants, who then have twenty days to file a proposed answer. *Id.* § 166i(c). Upon receipt of the answer, the Committee appoints an expert to review the malpractice claim and write an opinion "concerning whether or not the defendant acted or failed to act within the appropriate standards of medical care ...." *Id.* § 166i(d)(1). Either party may use this opinion in subsequent litigation. *Id.* § 166i(d)(4). The filing of the proposed complaint with the Committee tolls the applicable statute of limitations until ninety days after issuance of the expert opinion, *id.* § 166i(b), but the claimant is free to file his action in court if the Committee has not received its expert opinion within ninety days of the original filing, *id.* § 166i(c).

Viewing the Tort Claims Act and the Medical Malpractice Act together, we do not believe the legislature intended the claim filing requirements of the latter to replace the corresponding requirements of the former. The Tort Claims Act states that the Government consents to have its liability determined "in accordance with the

same rules of law as applied to actions in the courts of the Virgin Islands against individuals and corporations; *Provided, That* the claimant complies with the provisions of this chapter." 33 V.I.C. § 3408 (emphasis added). The clear import of this language is that a malpractice claimant seeking recovery against the Government must comply with the filing rules governing malpractice claims generally, plus any relevant filing rules governing claims against the Government. Nothing in the Medical Malpractice Act argues against this construction. The few relevant passages in the legislative history of the Medical Malpractice Act indicate that the Virgin Islands legislature intended the Tort Claims Act to continue governing claims asserted against the Government.[3]

Moreover, we do not believe that the claim filing requirements of the Tort Claims Act and Medical Malpractice Act perform the same functions. Clearly the purpose of the former is to give the Government early notice of the basic facts and the nature of the tort claim being asserted, thereby allowing the Government to investigate and assess the claim while the evidence is still fresh. The Act excuses failure to give early notice only if the Government knew the facts underlying the claim anyway and was not substantially prejudiced by the delay. In contrast, the Medical Malpractice Act imposes no explicit deadline on the filing of the proposed complaint with the Malpractice Committee. The only time limit is the statute of limitations, which operates only because the proposed complaint must be filed with the Committee before any action may be filed in court, 27 V.I.C. § 166i(b). If we were to hold that the Medical Malpractice Act supplanted the Tort Claims Act, we would in effect eliminate the early notice provision in malpractice actions against the Government. We cannot believe the Virgin Islands legislature intended such a result.

Finally, we disagree with the district court's conclusion that the two acts are irreconcilable. There is no reason to believe that an alert plaintiff's counsel could not comply with both acts. The true problem in this area of litigation is not direct conflict between the two statutes but the large number of pitfalls the claimant must negotiate before he recovers against the Government. The territorial and district courts of the Virgin Islands have had to dismiss claims repeatedly for failure to satisfy the preconditions for recovery against the Government under the Tort Claims Act. Because the malpractice claimant must comply with the requirements of two statutes, he is especially vulnerable to such dismissal. This problem, however, is legislative, not judicial. The Virgin Islands legislature may wish to reexamine the area of malpractice litigation with this and other problems [4] in mind. Until such time, however, we will require compliance with both statutes. *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

We therefore hold that a claimant seeking recovery against the Government for alleged malpractice must comply not only with the claim filing requirements of the Medical Malpractice Act, 27 V.I.C. § 166i, but also with the filing requirements of the

---

**3.** At one point during the two-day debate of the bill, Senator Moorhead, a critic, asked whether some of the language in the definition of "health care provider", 27 V.I.C. § 166(c), could be deleted without affecting the coverage of any parties:

> [C]an that sub-item not be deleted without causing any damage to the bill, since the people that we are trying to cover are in any event going to be operating under one of the professionals covered above *or in the case of the hospital, they are going to be operating under the administrator of the hospital who will be covered by the tort claims act* [sic].

Leg. Debate on Bill 6773, 11th Leg. Sess. of V.I., Oct. 29, 1974, at 11. Senator Dawson, the bill's sponsor, replied in part that "ostensively, when someone sue, they are suing under the tort claim [sic]. The Virgin Islands Organic Act limits the recovery, et cetera, et cetera .... [sic]" *Id.*

**4.** *See Richardson v. Knud Hansen Memorial Hospital,* 744 F.2d 1007 (3d Cir.1984); *Kock v. Government of the Virgin Islands,* 744 F.2d 997 (3d Cr.1984).

Tort Claims Act, 33 V.I.C. §§ 3409, 3410.[5] We will vacate the district court's order and remand this action for a determination of whether the plaintiff's failure to comply with the requirements of the Tort Claims Act should be excused under 33 V.I.C. § 3409.[6]

## IV.

The district court's order will be vacated and this matter will be remanded for further proceedings consistent with this court's answer to the question certified under 28 U.S.C. § 1292(b). The parties to this appeal will bear their own costs.

---

**5.** We express no opinion about how strictly the Tort Claims Act should be applied, an issue that has concerned the courts of the Virgin Islands. *See, e.g., McBean v. Government of the Virgin Islands,* 19 V.I. 383 (Terr.Ct.V.I.1983); *Pickering v. Government of the Virgin Islands,* 19 V.I. 271 (D.V.I.1982), *appeal dismissed,* 727 F.2d 1100 (3d Cir.1984).

**6.** The Tort Claims Act allows the district court to grant an excuse only if an application is made within two years. It is now two and one-half years since the date of the alleged malpractice that is the subject of plaintiff's complaint. Plaintiff's request for an excuse, however, was timely when originally filed in November 1982, and the district court on remand should continue to treat the request as timely.