

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-29-2002

# BA Prop Inc v. Virgin Islands

Precedential or Non-Precedential: Precedential

Docket No. 00-2771

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"BA Prop Inc v. Virgin Islands" (2002). *2002 Decisions.* Paper 453.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/453

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed July 29, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2771

BA PROPERTIES INC.; BANK OF AMERICA N.T. & S.A.

v.

GOVERNMENT OF THE UNITED STATES VIRGIN
ISLANDS; MARIE BASS, IN HER CAPACITY AS
RECORDER OF DEEDS; GWENDOLYN ADAMS,
IN HER CAPACITY AS COMMISSIONER OF DEP'T OF
FINANCE, Appellants

On Appeal From the United States District Court
of the Virgin Islands
Appellate Division
(D.C. Civ. No. 96-cv-00009)
District Judge: Honorable Raymond L. Finch, Chief Judge
District Judge: Honorable Thomas K. Moore
Territorial Judge: Honorable Patricia D. Steele

Argued: December 6, 2001

Before: BECKER, Chief Judge, NYGAARD and
COWEN,* Circuit Judges.

(Filed: July 29, 2002)

_____

* Judge Cowen sat on this appeal, but discovered after oral argument
that he was disqualified. He has taken no part in the disposition of the
case.


        IVER A. STRIDIRON, ESQUIRE
        Attorney General
        FREDERICK HANDLEMAN,
         ESQUIRE
        Solicitor General
        RICHARD M. PRENDERGAST,
         ESQUIRE (ARGUED)
        Assistant Attorney General
        Office of the Attorney General
         of the Virgin Islands
        6040 Castle Coakley
        Christiansted, St. Croix,
         Virgin Islands 00820

        Counsel for Appellants

        MARIA T. HODGE, ESQUIRE
          (ARGUED)
        DANIELLE C. COMEAUX, ESQUIRE
        Hodge & Francois

        1340 Taarneberg Road
        St. Thomas, Virgin Islands 00802

        Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

This appeal presents a close and difficult question
concerning the meaning of an exemption provision in the
Virgin Islands Stamp Tax Act. At the first level, resolution
of the case requires investigation of the law of real estate
financing, with consequent impact on foreclosure practice
in the U.S. Virgin Islands. Ultimately, however, the case
turns on the application of the rules of construction
governing tax exemptions, and particularly the strength of
the rule that such exemptions are construed narrowly
against the party seeking them.

BA Properties, Inc. ("BA") is a subsidiary of the Bank of
America, N.T. and S.A., ("the Bank"), which represents the
Bank with respect to real property acquired through

foreclosure. When Pemberton Resorts, Inc. defaulted on a
loan that was secured by a Bank of America, N.T. and S.A.
mortgage on the Grand Palazzo Hotel in Estate Nazareth,
St. Thomas, the Bank filed a foreclosure action in the
District Court of the Virgin Islands. The District Court
approved a consent judgment and issued an order of
foreclosure, fixing the debt at $29,418,123. The District
Court's order instructed the U.S. Marshal's Service to seize
and sell the property at auction. BA was the sole bidder at
the marshal's sale, acquiring the property for $22,500,000,
which it applied as a credit against the debt Pemberton
owed to the Bank. The Marshal's Service conveyed title to
BA via a marshal's deed.

The Virgin Islands Stamp Tax Act imposes a two percent
excise on the value of real property transferred "by
instrument of conveyance." 33 V.I.C. S 121(a)(1) (1994). The
provision that gives rise to the question on appeal is an
exemption specifying that the excise tax "shall not apply to
a transfer of title . . . solely in order to provide or release
security for a debt or obligation." 33 V.I.C.S 128(a)(2)
(1994). When BA attempted to record the marshal's deed,
the Recorder of Deeds in St. Thomas refused to record it
until the Stamp Tax was paid. Instead of paying the tax, BA
petitioned the Territorial Court of the Virgin Islands for a
declaratory judgment that under S 128(a)(2), it was exempt
from the Stamp Tax. It also sought a writ of mandamus
ordering the Recorder to record the deed.

Following a hearing, the Territorial Court denied BA's
petition, finding, with little explanation, that the post-
foreclosure conveyance of property by marshal's deed at
issue in this case was not executed "solely in order to

provide or release security for a debt or obligation," and that the transaction was therefore subject to the Stamp Tax. However, the Appellate Division of the District Court of the Virgin Islands reversed, concluding that the transaction at issue in this case falls under the S128(a)(2) exemption. We exercise plenary review over the Appellate Division's construction of the Stamp Tax statute, much as we would when reviewing a district court's construction of a statute. Following our established jurisprudence, we decline to apply the more deferential "manifest error" standard of

review that BA urges us to use on account of the supposed implications for the development of indigenous Virgin Islands jurisprudence arising from Congress's creation of the Appellate Division.

We must begin our analysis with the rule of construction that "statutory exemptions from taxation, being a matter of grace, are to be strictly and narrowly construed," Tracy Leigh Dev. Corp. v. Gov't of the Virgin Islands, 501 F.2d 439, 443 (3d Cir. 1974) (citation omitted), and that any doubt is to be resolved against the taxpayer. While we do not think BA Properties' interpretation is unreasonable, we also think that the interpretation suggested by the GVI -- that S 128(a)(2) was meant to apply to transactions in which a deed of trust is used as a mortgage substitute-- is not unreasonable. We therefore have no choice, applying the relevant rule of construction, but to reverse the order of the Appellate Division and reinstate the order of the Territorial Court. While this decision will of course be to the short-term revenue advantage of the GVI, it may very well impede the flow of credit to the Virgin Islands to finance similar projects because of the extent to which it increases the transaction costs in the event of foreclosure. The Virgin Islands Legislature may, of course, clarify or modify the scope of the exemption provided by S 128(a)(2) if it disagrees with the outcome of this case.

I. Relevant Statutes and the Rulings of the Territorial Court and the Appellate Division

The Virgin Islands Stamp Tax Act, 33 V.I.C. S 121(a)(1), provides that "[a] stamp tax at the rate of two percent (2%) of the value of the property is imposed on the transfer of title to . . . [r]eal property by instrument of conveyance." An exemption provision in the Act, 33 V.I.C. S 128(a)(2), states that "[t]he tax imposed by this chapter shall not apply to a transfer of title . . . solely in order to provide or release security for a debt or obligation." 33 V.I.C.S 128(a)(2). The Territorial Court rested its oral opinion largely on the canon of statutory construction that exemptions from tax obligations are to be construed narrowly and in favor of the government. The Court concluded that the S 128(a)(2) exemption was intended to apply exclusively to a deed in

lieu of foreclosure. A deed in lieu of foreclosure is a "deed by which a borrower conveys fee-simple title to a lender in satisfaction of a mortgage debt and as a substitute for foreclosure." Black's Law Dictionary 423 (7th ed. 1999).

The Appellate Division reversed, relying on the provision in Virgin Islands law that a mortgage interest in property provides a lender with a remedy only against the mortgaged property, not against the debtor in its individual or institutional capacity. The Appellate Division noted that a foreclosure action is the only way that a lender may unilaterally recover mortgaged property in the case of default. A deed in lieu of foreclosure, the other method by which a lender may recover the secured property, must be executed voluntarily by the mortgagor. See Restatement (Third) of Property: Mortgages S 8.5 cmt. b (1997).1 Therefore, the Appellate Division reasoned, the only realistic way of releasing security for the debt or obligation, a conveyance by marshal's deed following a foreclosure sale, must be exempt from the Stamp Tax under S 128(a)(2).

The Government of the Virgin Islands ("GVI") timely appealed and now argues that: (1) it is clear from the plain language of S 128(a)(2) that BA's transaction was not exempt from the Stamp Tax; and (2) the language of S 128(a)(2) is at least ambiguous, i.e., it does not make clear that BA qualifies for the exemption, and that the Appellate Division erred by failing to resolve the ambiguity in the light most favorable to the taxing authority. The argument of the GVI is largely focused on the fact that multiple legal consequences follow from a creditor's purchase of the property securing its loan at a foreclosure sale, and therefore that the transaction cannot be said to be "solely . . . to provide or release security for a debt or obligation." 33 V.I.C. S 128(a)(2). The GVI also suggests that S 128(a)(2) is intended to apply to transactions in which parties use the deed of trust as a mortgage substitute.

---

1. "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. S 4 (1995).

The Territorial Court has general jurisdiction over matters of Virgin Islands law. Callwood v. Enos , 230 F.3d 627, 631 (3d Cir. 2001). The Appellate Division had appellate jurisdiction based on 4 V.I.C. S 33 (1997). This court has jurisdiction from the final order of the Appellate Division pursuant to 28 U.S.C. S 1291 and 48 U.S.C. S 1613a(c). Ordinarily, we would go directly to an analysis of the legal contentions of the parties with the understanding that the issues just described present legal issues subject to plenary review. However, because of the

argument forcefully pressed by BA, citing In re Alison, 837 F.2d 619 (3d Cir. 1988), and Hess Oil Virgin Islands Corporation v. Richardson, 894 F. Supp. 211, 214-15 (D.V.I. App. Div. 1995) ("HOVIC"), for the proposition that the Third Circuit should defer to the Appellate Division's interpretations of Virgin Islands law and review them only for "manifest error," we must first take up the standard of review question.

II. Standard of Review

In HOVIC, the Appellate Division of the District Court of the Virgin Islands purported to define the standard of review that the Third Circuit should apply when reviewing the Appellate Division's interpretation of local Virgin Islands law. HOVIC's analysis proceeds from this court's statement in Alison that the creation of the Appellate Division "represents a step in th[e] direction" of "a local Virgin Islands appellate structure with greater autonomy with respect to issues of Virgin Islands law," rather than "the creation of a territorial federal appellate court with a place and role analogous to the place and role of the courts of appeals in the Article III court structure." Alison, 837 F.2d at 622.

Seizing on this language from Alison, the HOVIC court expressed the view that the Third Circuit should review the Appellate Division's interpretation of local law under the "manifest error" standard that the Supreme Court in some older cases has applied to the review of insular appellate courts in the territories of Puerto Rico and (pre-statehood) Hawaii. HOVIC, 894 F. Supp. at 215 (citing De Castro v. Bd. of Comm'rs, 322 U.S. 451, 458-59 (1944), and Waialua

6

Agric. Co. v. Christian, 305 U.S. 91, 109 (1938)). We disagree. We have previously rejected the "manifest error" standard of review that HOVIC suggests. And at all events, we are convinced that HOVIC is incorrect because it proceeds from the flawed premise that the Appellate Division is the equivalent of a local appellate or supreme court.

In several cases, we have rejected the interpretation that the HOVIC court espoused and that BA now advances. In Saludes v. Ramos, 744 F.2d 992, 994 (3d Cir. 1984), we held that we would exercise plenary review over decisions in which the District Court of the Virgin Islands interprets Virgin Islands law, and rejected the "manifest error" standard that BA urges us to apply in the present case. The HOVIC court attempted to distinguish Saludes because it "(1) was on direct appeal from the district court sitting as a trial court, not an appeal from the Territorial Court, and (2) preceded the 1984 amendments to the Organic Act which set up the present separate, insular judicial system for the Territory." HOVIC, 994 F. Supp. at 215 n.9. However, we have continued to exercise plenary review over the District Court of the Virgin Islands's interpretation of

Virgin Islands law after the 1984 amendments to the Organic Act. See Gov't of the Virgin Islands v. Smith, 949 F.2d 677, 680 (3d Cir. 1991) ("We exercise plenary review over the interpretation of Virgin Islands law.") (citing Saludes, 744 F.2d at 993-94); Virgin Islands Conservation Soc., Inc. v. Virgin Islands Bd. of Land Use Appeals , 881 F.2d 28, 30 n.6 (3d Cir. 1989) (same).

The HOVIC court's interpretation of Alison also appears to be foreclosed by Semper v. Santos, 845 F.2d 1233 (3d Cir. 1988), which held that in the Territorial Court's and Appellate Division's "two-tiered system of appellate review[,] . . . the [Third Circuit] should review the trial court's determination using the same standard of review applied by" the Appellate Division. Id. at 1235 (citation omitted); see also Gov't of the Virgin Islands v. Albert, 241 F.3d 344, 347 n.3 (3d Cir. 2001) (same).

The HOVIC court reads our statement in Alison to mean that for purposes of review we should treat the Appellate Division as if it were a local appellate or supreme court. We

7

think that this interpretation of Alison is incorrect. The Appellate Division of the District Court of the Virgin Islands is essentially a federal creature, and not an insular appellate court. It was created by federal law, and its panels always contain a majority of federal judges. 48 U.S.C. S 1613a(b).2 To be sure, since 1984 the Virgin Islands Legislature has had the authority to create a Virgin Islands Supreme Court that would essentially have the final word on the interpretation of local Virgin Islands law, but it has not yet chosen to exercise that authority. 48 U.S.C. S 1611(a).3 While we sympathize with the spirit of Judge Moore's discussion in HOVIC -- the desire for an indigenous Virgin Islands jurisprudence -- that endeavor

_____

2. The Revised Organic Act provides that:

> Appeals to the District Court of the Virgin Islands shall be heard and determined by an appellate division of the court consisting of three judges, of whom two shall constitute a quorum. The chief judge of the district court shall preside therein unless disqualified or otherwise unable to act. The other judges who are to sit in the appellate division at any session shall be designated by the presiding judge from among the judges who are serving on, or are assigned to, the district court . . . Provided , That no more than one of them may be a judge of a court established by local law.

48 U.S.C. S 1613a(b). The Judges of the District Court of the Virgin Islands are appointed by the President of the United States with the advice and consent of the Senate for a term of ten years. 48 U.S.C. S 1614.

3. The Revised Organic Act gives the Virgin Islands Legislature the authority to create an "appellate court and lower local courts," 48 U.S.C. S 1611(a), in which it "may vest . . . jurisdiction over all causes in the

Virgin Islands over which any court established by the Constitution and laws of the United States does not have exclusive jurisdiction." S 1611(b). "[F]or the first fifteen years following the establishment of the [Virgin Islands] appellate court[,] . . . the United States Court of Appeals for the Third Circuit shall have jurisdiction to review by writ of certiorari all final decisions from the highest court of the Virgin Islands . . . ." 48 U.S.C. S 1613. The Act also provides that the"Judicial Council of the Third Circuit shall submit reports" to specified committees in the Senate and House of Representatives "at intervals of five years following the establishment of such appellate court as to whether it has developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States . . . ." S 1613.

has proved and will continue to prove very difficult to attain until the Virgin Islands has its own appellate court composed entirely of locally appointed judges, which would essentially supplant the Third Circuit. See supra note 3; 48 U.S.C. S 1613.

The Appellate Division exercised plenary review over the Territorial Court's interpretation of S 128(a)(2). We will also exercise plenary review over the Appellate Division's order, much as we would when reviewing a district court's interpretation of a statute. See Rosenberg v. XM Ventures, 274 F.3d 137, 140 n.1 (3d Cir. 2001).

III. Is the Conveyance of Property by Marshal's Deed
     to the Mortgagee Following a Court-Ordered
     Foreclosure Sale Exempt From the Stamp Tax
     Under 33 V.I.C. S 128(a)(2)?

A. BA's Contentions

BA concedes that the marshal's deed by which it took title to the property at issue effected a "transfer of title to . . . [r]eal property by instrument of conveyance" within the meaning of 33 V.I.C. S 121. Therefore, BA must pay the Stamp Tax unless its transaction is exempt under 33 V.I.C. S 128(a)(2), which provides that the Stamp Tax"shall not apply to a transfer of title . . . solely in order to provide or release security for a debt or obligation." Drawing on the Appellate Division's opinion, BA submits that its transaction falls within the S 128(a)(2) exemption for two reasons.

First, BA contends that because a foreclosure action is the only way under Virgin Islands law that a mortgagee may unilaterally recover the security for its loan in the event of default, the transfer of property to the mortgagee following a foreclosure sale is done "solely in order to release security for a debt or obligation." Second, BA argues that the GVI does not point to any transactions under Virgin Islands law that would be covered by S 128(a)(2) if not the one at issue in this case. It argues that conveyances by deed in lieu of foreclosure, which it asserts are in practice exempt from the Virgin Islands Stamp Tax, and

which the Territorial Court found to be exempt under
S 128(a)(2), are not functionally different from the
transaction at issue in this case. BA also submits that the
GVI's argument that S 128(a)(2) applies only to "situations
in which legal title is transferred by a debtor to his lender
for the purpose of securing the debt -- not for transferring
ownership," refers to the "title theory" of mortgage law,
which does not exist in the Virgin Islands.4

B. The GVI's Approach and the Deed of Trust
Interpretation

The GVI relies primarily on the argument that the
multiple legal effects of the transaction at issue in this case
mean that it cannot be considered to have been executed
"solely . . . in order to provide or release security for a debt
or obligation" under S 128(a)(2). We address (and reject) the
GVI's primary argument in the margin.5   The GVI also

---

4. BA also argued before the Territorial Court and the Appellate Division
that it qualified for an exemption from the Stamp Tax under 33 V.I.C.
S 128(a)(1) (1994), another section that exempts transfers of title "from or
to the United States . . . or any instrumentality thereof." S 128(a)(1). The
Territorial Court and the Appellate Division rejected BA's S 128(a)(1)
argument, and BA does not raise it before this court.

5. The GVI contends that under the plain language of S 128(a)(2), the
marshal's deed at issue in this case was not executed "solely in order to
provide or release security for a debt or obligation." 33 V.I.C. S 128(a)(2).
It submits that the term "solely" should be read to mean "exclusively,"
and that if a transfer was executed "solely in order to . . . release
security for a debt or obligation," it means that the transfer
"accomplishe[d] only one thing and nothing more, . . . [i.e.,] the release
of the mortgage lien on the subject property." It contends that not just
one, but "several legal consequences flow from a foreclosure and sale
followed thereafter by the execution of a Marshal's Deed":

>     First, once the right of redemption has passed, a properly concluded
>     foreclosure sale "cuts off the [mortgagor's] equity of redemption." 59
>     C.J.S. [Mortgages] S 554 at 665. Second, "a completed foreclosure of
>     a mortgage amounts to a satisfaction of the mortgage debt to the
>     extent of the value of the mortgaged premises." 59 C.J.S., supra,
>     S 553 at 664. Third, a "mortgage foreclosure sale terminates the
>     relationship between mortgagor and mortgagee." In re Application of
>     Small Business Administration, 14 Kan. App. 2d 600, 797 P.2d 879,

suggests that S 128(a)(2) could be intended to refer to
transactions in which a deed of trust is used as a mortgage

---

>     883 (1990). Fourth, and most importantly, "[i]n general, a valid and
>     completed foreclosure operates to divest the title to the mortgaged
>     premises possessed by the mortgagor, to which the mortgage has

          attached." 59 C.J.S., supra, S 554 at 665.

(citations omitted).

From this list, the GVI concludes that "[c]learly, a foreclosure and sale,
followed by execution of a Marshal's Deed accomplishes several things
and is not limited 'solely' to release of the property from the mortgage
lien." The GVI then asserts that, of the many effects of a foreclosure sale
(and the conveyance of title that follows), the"primary purpose" is to
transfer title. In other words, the GVI contends that BA's purpose in
buying the property at the foreclosure sale was to take title, not to
release the security on the property.

We reject the GVI's argument that the transfer at issue here is not
"solely in order to . . . release security" because "several legal
consequences flow from a foreclosure and sale followed thereafter by the
execution of a Marshal's Deed." (emphasis added). There are many
problems with the GVI's argument. First, the GVI conflates purpose and
effect. The most natural reading of S 128's language that limits the
exemption to "a transfer of title . . . solely in order to . . . release security
for a debt or obligation," is that the exemption is limited to those
transfers for which the purpose is to release security for a debt. The GVI
interprets S 128(a)(2) to mean that the transfer "must accomplish one
thing and nothing more," i.e., that its sole effect is to release security for
a debt or obligation. We think that it is incorrect to equate purpose and
effect in this context. Something can have a single purpose, but can
effectuate more than one thing, each being incidental to the action's
purpose.

Second, and at all events, the four different effects that the GVI
identifies in its brief and we quote above, are really restatements of only
two things: (1) the release of security for a debt; and (2) the transfer of
title. The GVI's first argument is that the foreclosure cuts off the
mortgagor's "equity of redemption." The equity of redemption is the "right
of a mortgagor in default to recover property before a foreclosure sale by
paying the principal, interest, and other costs that are due." Black's Law
Dictionary 561 (7th ed. 1999). Therefore, to say that the period during
which the mortgagor may exercise its redemption rights has ended, is no
different from saying that title has been transferred conclusively from the
mortgagor to the foreclosure sale purchaser. The GVI's second argument

                                11

substitute. The Virgin Islands Legislature has recognized
transactions by deed of trust, which effect a transfer of
equitable title that can be used as a mortgage substitute.
See, e.g., 22 V.I.C. S 563 (defining "encumbrance" of "real
property" "with respect to loans secured by mortgage, deed
of trust, or other collateral . . . ."); 9 V.I.C.S 251 (defining
"credit" to include "any loan, residential mortgage, [or] deed
of trust"); 13 V.I.C. S 803 (defining the powers of a Virgin
Islands corporations to include the ability to secure loans
"by mortgage, pledge, [or] deed of trust"). A deed of trust is
"[a] deed conveying title to real property to a trustee as
security until the grantor repays a loan." Black's Law
Dictionary 423 (7th ed. 1999). "This type of deed resembles
a mortgage," and has been used as a mortgage substitute.
Id.6

-- that "a completed foreclosure of a mortgage amounts to a satisfaction of the mortgage debt to the extent of the value of the mortgaged premises" -- is not conceptually different from saying that the security on the debt is released. The GVI's third contention-- that a "mortgage foreclosure sale terminates the relationship between mortgagor and mortgagee" -- again is simply a slightly different way of saying that the foreclosure sale acted to release the security on the property. The GVI's fourth and "most important" argument -- that"[i]n general, a valid and completed foreclosure operates to divest the title to the mortgaged premises possessed by the mortgagor, to which the mortgage has attached" -- is simply a different way of saying that title is conveyed from the mortgagor to the purchaser.

The two categories into which these four supposed"multiple effects" of a foreclosure sale fall are both contemplated by theS 128(a)(2) exemption and therefore cannot be reasons why the S 128(a)(2) exemption should not apply to the transaction at issue in this case. All of the exemptions in S 128 apply to "transfer[s] of title," S 128, (the GVI's first and fourth arguments). And S 128(a)(2) specifically applies to conveyances executed "solely in order to . . . release security,"S 128(a)(2), (the GVI's second and third examples). Therefore, S 128(a)(2) specifically contemplates all four of the examples of additional effects that the GVI uses to argue that the transaction at issue in this case should not fall within the exemption.

6. The GVI also suggests that S 128(a)(2) is intended to exempt the "deed absolute intended as security" from the Stamp Tax. The deed absolute intended as security is an equitable doctrine of"constructive mortgage."

C. Discussion

1. The Rule of Construction Governing
      Exemptions from Taxation

Because this case requires us to interpret the scope of a statutory exemption from taxation, we must begin our analysis with the rule of construction that we have long applied to such questions. We apply the rule of construction that "statutory exemptions from taxation, being a matter of grace, are to be strictly and narrowly construed." Tracy Leigh Dev. Corp. v. Gov't of the Virgin Islands, 501 F.2d 439, 443 (3d Cir. 1974) (citation omitted). We have held that pursuant to this rule of construction, "any doubt . . . must be resolved against the taxpayer." Bell Atlantic Corp. v. United States, 224 F.3d 220, 222-23 (3d Cir. 2000). Moreover, we have previously explained that a governmental authority's construction of its own tax exemption must be accorded "great weight." Desco Prods. Caribbean, Inc. v. Gov't of the Virgin Islands, 511 F.2d 1157, 1159 (3d Cir. 1975).

This rule of construction is grounded in the separation of powers doctrine. See United Retail & Wholesale Employees v. Yahn & McDonnell, Inc., 787 F.2d 128, 142 (3d Cir. 1986), aff 'd by an equally divided Court, 481 U.S. 735 (1987) (noting that separation of powers principles underlie

Some courts have applied it to deal with situations where a borrower conveys to his creditor what appears to be an absolute deed, but where the borrower intended (and can prove) that he or she intended for it to serve only as security for a loan. 4 Powell on Real Property S 37.18 (Michael Allan Wolf ed., Matthew Bender 2001). Neither of the parties has cited any legal authority that shows that the Virgin Islands recognizes and enforces absolute deeds intended as security. In contrast, the Virgin Islands Legislature has specifically recognized the deed of trust. We therefore think it much more plausible that S 128(a)(2) was intended to apply to deeds of trust than absolute deeds intended as security. At all events, we need not reach the question whether the statute applies to both because, as we explain, as long as the statute does not unequivocally provide for an exemption for the present transaction, and if either alternative reading is not unreasonable, we must side with the taxing authority.

13

rules of statutory construction). As one commentator has pointed out, the rule of construction compelling the narrow interpretation of an exemption from taxation also serves the purpose of forcing legislators to speak clearly when granting tax exemptions, which "are often the product of lobbying efforts by well organized private groups, and thus a reflection of factional influence." Cass R. Sunstein, Nondelegation Canons, 67 U. Chi. L. Rev. 315, 334 (2000).

This rule of construction does not mean that a court must always accept the taxing authority's interpretation of an exemption, even when that interpretation is unreasonable or contrary to the clear purpose of the exemption. See 3A Norman J. Singer, Sutherland Stat. Constr. S 66.09 at 43 (5th ed. 1992) ("It is generally held that the statutes exempting property from taxation should be strictly construed in favor of taxation, but should not be interpreted unreasonably.") (emphasis added); see also Symphony Space, Inc. v. Tishelman, 453 N.E.2d 1094, 1096 (N.Y. 1983) ("While exemption statutes should be construed strictly against the taxpayer seeking the benefit of the exemption, an interpretation so literal and narrow that it defeats the exemption's settled purpose is to be avoided.").

A reflexive adherence to this canon without careful examination of the exemption in question may result in an abdication of the judiciary's responsibility to interpret statutes in ways that are faithful to legislative intent. However, if the government's interpretation of a tax exemption is not unreasonable, and not contrary to clear legislative purpose, we are bound by our rule of construction to interpret the exemption narrowly and in favor of the taxing authority. Therefore, under this analysis, we must determine first whether the statutory language of S 128(a)(2) unequivocally shows the Virgin Islands Legislature's intent to exempt the present transaction from taxation. If so, then BA will prevail. If not, we must, under the applicable rule of statutory construction, determine whether the GVI's alternative interpretation ofS 128(a)(2),

i.e., that it applies to transactions in which a deed of trust is used in place of a mortgage, is not unreasonable. If such an interpretation is not unreasonable, then we must accept it.

14

2. Does the Statutory Language of S 128(a)(2)
        Clearly Exempt the Present Transaction
        from Taxation?

The reasoning on which the Appellate Division relied, and that BA now submits as to why the present transaction is, or should be, exempt from taxation, is compelling from a policy standpoint. But as we explain below, the statutory language is ambiguous as to whether the present transaction is exempt from the Stamp Tax.

BA's undoubted purpose in buying in the Pemberton hotel property at the foreclosure sale in this case was to recover the money owed to the Bank, thereby discharging the mortgage. As the Appellate Division noted, a foreclosure action is the only method that a mortgagee has under Virgin Islands law for recovering in the event of default that does not require the borrower's consent. The mortgagee may obtain title only "through the court by a judgment of foreclosure and a judicial sale, unless the mortgagor and mortgagee later agree to another arrangement, such as a deed in lieu of foreclosure." App. Div. Mem. Op. at 10; see also 28 V.I.C. S 290 (1996) ("A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law, and a judgment thereon."). And the mortgagee may recover only against the property, not against the debtor in his or her personal capacity, unless the debtor has agreed in a separate instrument to be personally liable for the debt. See 28 V.I.C. S 10 (1996).7

We acknowledge that BA's purpose in buying the property at the foreclosure sale can be characterized as recovering the debt owed to the Bank and/or as taking title

_____

7. 28 V.I.C. S 10 provides that:

        A mortgage does not imply a covenant for the payment of the sum
        thereby intended to be secured. When there is no express covenant
        for such payment in the mortgage, and no bond or other separate
        instrument to secure such payment has been given, the remedies of
        the mortgagee are confined to the property mentioned in the
        mortgage.

15

to the property for resale purposes.8 But taking title is arguably not an end in itself as the GVI suggests. The Bank is in the lending business; it made a huge loan

($29,418,123), and in view of the default, a huge mistake, and it had to protect itself and its shareholders. In this context, BA's purpose of recovering on the Bank's loan is arguably not, as we see it, meaningfully distinguishable from the purpose of "releas[ing] security for [the] debt," 33 V.I.C. S 128(a)(2), for a foreclosure action is for practical purposes the principal method by which a lender may recover the collateral property, and the release of security is the necessary consequence of the foreclosure. To be sure, a deed in lieu of foreclosure may sometimes be obtained. But to obtain it, there must be a viable, available, and willing mortgagor, and this frequently will not be the case.

We think that a mortgagee should have the right to recover the mortgaged property unilaterally; we see no good reason why tax consequences should be imposed as a price on its exercise of the remedy. If it were, the flow of credit to the Virgin Islands could be seriously impaired. Indeed, it seems unlikely that the Virgin Islands Legislature intended to give defaulting borrowers the power to determine whether or not the lender to whom they owe their debt must pay the Stamp Tax when recovering the property securing the loan.

Even though BA's policy arguments are compelling, we are required to interpret the legislature's intent from the language of S 128(a)(2), which we must admit is ambiguous in the sense that it does not clearly indicate that the present transaction is exempt from the Stamp Tax. This would be a different, or at least, an easier case if the import of S 128(a)(2), which exempts from taxation transfers of title "solely . . . to provide or release security," were clear. But the meaning of the quoted phrase is not clear and it does not by itself mandate the interpretation that BA Properties proposes, or any other interpretation. More specifically, it does not tell us whether the transaction at issue here, transfer of title to the lender by marshal's deed following a foreclosure sale, is one that is done "solely to provide or

_____

8. Obviously the transfer tax would have to be paid on resale.

16

release security." It surely might be, but then again it might not.

Section 128(a)(2)'s use of the terms "to . . . release security" contributes to the section's ambiguity. The term "release," at least when employed as a noun, is a term of art in the law of real estate conveyancing. A borrower, upon fully meeting his obligation, may obtain a "release" of his or her indebtedness from the creditor. The "release" is a formal legal instrument, usually some type of document, given from the lender to the borrower. It is not conventional in the realm of real estate transactions to say that the mortgagee's receipt of a deed after foreclosure sale "releases" much less "provides" "security." A "release" is a legal event that happens for the benefit of the borrower, not

the creditor, like BA. See 4 Powell on Real Property
S 37.33[2] (Michael Allan Wolf ed., Matthew Bender 2001)
("[W]hen the full obligation has been paid, a formal
instrument of release . . . is executed by the mortgagee with
the formalities required for recordation."); Blacks Law
Dictionary 1292 (7th ed. 1999) (defining the specific phrase
"release of mortgage" as "[a] written document that
discharges a mortgage upon full payment by the borrower
and that is publicly recorded to show that the borrower has
full equity in the property."); see also Powell, at S 37.33[2]
("In the case of modern deeds of trust, the trustee has the
responsibility of executing a release deed or a deed of
reconveyance after full payment [by the borrower] has been
made.") (emphasis added).

The precise meaning of the word "release" in the real
property context can also be ascertained through another
section of the Virgin Islands Tax Code. 33 V.I.C.S 1825(d),
for example, employs the same choice of words as the
exemption in 33 V.I.C. S 128. Section 1825(d) provides:

> Release to debtor
>
> In cases where real estate has or may become the
> property of the Virgin Islands by conveyance or
> otherwise, in payment of or as security for a debt
> arising under the laws relating to internal revenue, and
> such debts shall have been paid . . . to the Virgin
> Islands . . . it shall be lawful for the [Virgin Islands] to

17

> release by deed or otherwise convey such real estate to
> the debtor from whom it was taken. . . .

33 V.I.C. S 1825(d) (emphasis added). As Section 1825(d)
demonstrates, a "release" is obtained by a debtor when the
debt has been paid and a "release" may take place by
transferring a deed. If the Virgin Islands Legislature's use of
the term "to . . . release security" in S 128(a)(2) were
intended to refer to the "release" that a debtor obtains after
paying off a debt, then that would likely preclude the
section from applying to the present transaction, because a
"release" is not the consequence of buying property at a
foreclosure sale. Rather, once a "release" is made, a
foreclosure is no longer possible. See 59 C.J.S. Mortgages
S 485 (1998) (A "release" constitutes "a bar to any action for
the foreclosure of the mortgage"); Id. atS 534 ("[T]he right
to foreclose is precluded by . . . a release."); First Indiana
Fed. Sav. Bank v. Hartle, 567 N.E.2d 834, 836-37 (Ind. Ct.
App. 1991) (explaining that bank was "unable to foreclose"
because of the "release of the mortgage"). While the
language of S 128(a)(2) must be read in light of the
structure of the Stamp Tax Act and the legislature's likely
policy goals, and while these considerations would lead us
to resolve the uncertainty by concluding that the Virgin
Islands Legislature likely intended to exempt the
transaction at issue in this case from the Stamp Tax, we
are dealing with the meaning of words. The fact is that the

text of the exemption -- especially its use of the term "release" -- is ambiguous. As will appear below, this consideration is critical to our ultimate resolution of this case.

3. Is it Reasonable to Interpret S 128(a)(2)
        as Applying to Transactions in which a
        Deed of Trust is Used as a Mortgage Substitute?

Having concluded that the language of S 128(a)(2) does not unambiguously exempt the present transaction from the Stamp Tax, we must determine whether the "deed of trust interpretation" that the GVI proposes forS 128(a)(2) is a reasonable reading of the section's provision that the Stamp Tax "shall not apply to a transfer of title. . . solely

in order to provide or release security for a debt or obligation." 33 V.I.C. S 128(a)(2).

The GVI contends that S 128(a)(2) is aimed at those transactions in which parties use a deed of trust in lieu of a mortgage to secure a loan on a piece of real property. As noted above, a deed of trust is "[a] deed conveying title to real property to a trustee as security until the grantor repays a loan." Black's Law Dictionary 423 (7th ed. 1999). "This type of deed resembles a mortgage," and has been used as a mortgage substitute. Id. In such a transaction, a borrower typically conveys title in the property that he is buying with the borrowed funds to the lender or another party as trustee. After the debt is repaid, the trustee relinquishes title to the property. See 4 Powell on Real Property S 37.33[2] (Michael Allan Wolf ed., Matthew Bender 2001). The arrangement is therefore similar in some ways to a traditional mortgage in which the lender holds a security interest in the property used to secure the loan until the borrow repays the debt. The interpretation that S 128(a)(2) is intended to apply to transactions by deed of trust used as mortgage substitutes is consistent with the language of the statutory section. A lender's conveyance of equitable title back to a borrower after the loan is repaid in full could indeed be the conveyance of real property"solely to . . . release security" to which S 128(a)(2) refers.

As noted above, the Virgin Islands Legislature has recognized the existence of the deed of trust. See, e.g., 22 V.I.C. S 563 (defining "encumbrance" of"real property" "with respect to loans secured by mortgage, deed of trust, or other collateral . . . ."); 9 V.I.C. S 251 (defining "credit" to include "any loan, residential mortgage, [or] deed of trust"); 13 V.I.C. S 803 (defining the powers of a Virgin Islands corporations to include the ability to secure loans"by mortgage, pledge, [or] deed of trust").

The Achilles heel of the "deed of trust" interpretation of S 128(a)(2) is that it is unclear whether the Virgin Islands considers a transaction by deed of trust to transfer title to property. In order for the argument that S 128(a)(2) was

intended to apply to deeds of trust to make sense, the
Virgin Islands would have to construe them to convey title
to the grantee rather than merely to convey a security

interest, (because the stamp tax itself applies only to
"transfers of title," 33 V.I.C. S 121(a)(1), and a transaction
that is not considered to effect a transfer of title would
therefore not need to be exempted). Jurisdictions that adopt
the "lien theory" of mortgages (of which the Virgin Islands
is one, see, e.g., Royal Bank of Canada v. Clarke, 373 F.
Supp. 599, 601 (D.V.I. 1974)), are split as to whether they
consider a deed of trust transaction to transfer title, or
merely to create a security interest in the property.
Compare 59 Macleod v. Moran, 94 P. 604, 605 (Cal. 1908)
(recognizing that in California, a "lien theory" jurisdiction, a
trust deed transfers title and not "mere[ly]" a lien) (cited in
Hamel v. Gootkin, 202 Cal. App.2d 27, 29 (1962)) , and
Brant v. Hargrove, 632 P.2d 978, 982-984 (Ariz. Ct. App.
1981) (recognizing Arizona as "lien theory" state but
nonetheless concluding that a limited form of "title" does
pass via a trust deed; trust deed "clearly destroys" the
"unity of title" in a joint tenancy), and , C.J.S. Mortgages
S 185 (1998) (explaining that in some states a trust deed
does convey title, citing Georgia, Illinois, Virginia, Arkansas,
and West Virginia as examples), with Brand v. First Fed.
Sav. & Loan Ass'n of Fairbanks, 478 P.2d 829, 832 (Alaska
1970) ("[A] deed of trust conveys only a lien. . . ."), and
Hohn v. Morrison, 870 P.2d 513, 516 (Col. App. 1993)
("Colorado has adopted the lien theory of mortgages under
which the mortgage or deed of trust creates a lien against
real property but does not convey title."), and Olympic Coast
Inv. Inc. v. U.S. Nat'l Ass'n, 2000 WL 713932, *2 (Wash.
App. Div. 2 2000) (noting that "Washington is a'lien theory'
jurisdiction [and thus] a deed of trust merely creates a
security interest, and title to the property remains with the
grantor"), and Wicker v. Texas Bank of Garland, N.A., 1995
WL 141152, *3 (Tex. App. Mar. 31, 1995) (noting that
"Texas follows the lien theory, not the title theory of
mortgages," and that "a deed of trust . . . does not convey
title to the property") (citing Taylor v. Brennan, 621 S.W.2d
592, 593 (Tex. 1981)).

Neither the Virgin Islands Legislature, nor the Virgin
Islands courts appear to have spoken on this issue.
Construing a deed of trust to create only a lien interest
rather than to convey title would be the interpretation most
consistent with Virgin Islands law. As noted above, the

Virgin Islands is a lien theory jurisdiction, and it has
specified by statute that mortgages create only liens, and
do not constitute transfers of title. See 28 V.I.C. S 290 ("A
mortgage of real property shall not be deemed a conveyance
. . . . .").9 Consistency is often the wisest course in the law.
Nevertheless, we have no guidance from the Virgin Islands

on this arcane rule of mortgage law, i.e., whether a deed of trust conveys title or only a lien. In the absence of such authority we will rely on our canon of statutory construction of exemption provisions in tax statutes and resolve this uncertainty in favor of the government's interpretation, and assume that the Virgin Islands considers transactions by deed of trust to transfer title. We therefore conclude that the reading that S 128(a)(2) is intended to exempt transactions from taxation in which the parties use a deed of trust as a mortgage substitute is a not unreasonable.10

_____

9. Restatement (3d) of Property: Mortgages  is arguably authority for the notion that the Virgin Islands accepts absolute deeds intended as security. While the Restatement may acknowledge the possibility of such an instrument, it rejects "absolute deed as security" as a mortgage substitute. See Restatement, intro. at 4 ("Lenders in the United States have made use of a variety of real estate security devices . . . [including] the deed of trust . . . [and] the absolute deed as security . . . . The result has been a plethora of devices and a corresponding profusion of legal uncertainty in most jurisdictions. The picture is not a tidy or efficient one. This Restatement proceeds on the premise that only one real property security device is necessary. It is here referred to simply as a mortgage . . . ."). See also 4 Powellon Real Property S 37.18. "Use of [the deed absolute intended as security] in creating a mortgage will generally involve unsophisticated lenders -- relatives and friends unassisted by legal counsel," and is disfavored because it creates a "considerable" "temptation to false swearing."

10. The Government of the Virgin Islands puts great weight on the New Hampshire Supreme Court's decision in Apte v. Department of Revenue Legislation, 437 A.2d 319 (N.H. 1981), which construed a statutory provision similar to the one at issue here not to include transactions in which a lender purchased the underlying property at a foreclosure sale. That two-page opinion devotes no more than a single paragraph to the issue, and decides it in a single sentence which perforce does not more than state its conclusion. Because Apte does not explain its reasoning, it is unhelpful in resolving the questions before this court. Moreover Apte

21

As suggested above, we think that BA Properties has the better policy arguments on its side. If we were not constrained by the rules of statutory construction governing tax exemptions, we would hold that the legislature intended to include both deeds of trust and the present transaction in the S 128(a)(2) exemption. As we have explained, however, the text of S 128(a)(2) is ambiguous and the GVI's suggestion that S 128(a)(2) is intended to apply to transactions involving deeds of trust is not unreasonable given the language of the statute. Therefore, we agree that in this case, the proper interpretation of S 128(a)(2) is not "so clear that there can be neither reasonable doubt nor controversy about its terms." Bailey v. Magwire, 89 U.S. 215, 226 (1874). And therefore, that doubt "must be resolved against the taxpayer." Bell Atlantic Corp., 224 F.3d at 223.

We think that this outcome may be contrary to the intent
of the Virgin Islands Legislature, in that it has the potential
to impede the flow of credit to the Virgin Islands, which has
long needed offshore development capital, by raising the
costs of recovering a loan when a borrower defaults. If these
thoughts resonate with the legislature, it may, of course,
amend the statute to clarify or modify the scope of the
S 128(a)(2) exemption.

The order of the Appellate Division will be reversed and
the order of the Territorial Court reinstated.11

_____

appears to rely on the fact that the New Hampshire Department of
Revenue Administration had recently promulgated a rule providing that
"[a]ll foreclosure deeds shall be subject to the tax imposed by RSA 78-
B:1, even though the buyer and the seller may be the same parties." Rev.
802.07 (eff. Sept. 9, 1981).

11. Although the Territorial Court held thatS 128(a)(2) exempts
transactions by deed in lieu of foreclosure from the Stamp Tax, we do
not reach the question because it was not presented to us in this appeal.

22

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

23