**GOVERNMENT OF The VIRGIN ISLANDS in the Interests of N.G., Minor/Appellant.**

No. CRIM. A.1997–084.

District Court, Virgin Islands, Appellate Division, D. St. Thomas and St. John.

Considered March 19, 1998.

Filed Oct. 5, 2000.

Treston E. Moore, Moore & Dodson, St. Thomas, VI, for Appellant.

Joel H. Feld, Assistant Attorney General, Department of Justice, St. Thomas, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE, Judge, District Court of the Virgin Islands and JUDGE MARIA M. CABRET, Presiding Judge of the Territorial Court, Division of St. Croix, Sitting by Designation.

## MEMORANDUM OPINION

PER CURIAM.

Appellant N.G. ["N.G." or "appellant"], a juvenile at the time of the underlying proceedings, appeals the order of the Family Division of the Territorial Court transferring him to the Criminal Division for further proceedings. For the reasons set forth below, the Court will affirm the Territorial Court's order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On February 1, 1995, a fight took place at Charlotte Amalie High School which resulted in the death of Lamar Knight ["Knight"]. Knight died as a result of a stab wound to his throat which cut through his trachea and aorta. The facts surrounding this altercation are disputed. The following is the statement of facts as provided by the appellant.

On January 31, 1995, N.G. and Knight were in a fight in which Knight beat up the appellant. The appellant states that there are conflicting stories of whether, during this fight, Knight threatened to kill him the following day at school or vice-versa. The next day, N.G. took a knife to school, allegedly to protect himself from the perceived threat posed by Knight. At Charlotte Amalie High School on February 1, 1995, N.G. enlisted the assistance of his cousin to help him resolve the dispute with Knight. The appellant's cousin attempted to speak to Knight but instead began to fight with Knight. Attempting to come to the aide of his cousin, N.G. drew his knife, approached Knight from behind, and made two superficial stab wounds in Knight's back, supposedly to divert Knight's attention from his cousin. N.G. states that his cousin then drew a knife and stabbed Knight from the front in the throat, presumably striking the fatal blow. N.G. maintains that approximately three witnesses saw the entire episode.

The government had a different rendition of the facts. On January 31st, after an altercation between N.G. and Knight, N.G. threatened that he would kill Knight the next day at school. True to his word, N.G. took a knife to school the next day, got into another fight with Knight, and stabbed him at least twice. The government's testimony before the Family Division judge at the 1997 hearing was that there was no evidence that any person other than the appellant came into physical contact with Knight during the fatal fight.

The remaining facts are undisputed by the parties. Following Knight's death, N.G. was arrested and charged with first degree murder. A transfer order was initially entered on April 1, 1995, transferring N.G. to the adult jurisdiction of the Territorial Court. This transfer order was later vacated by this Court. *See Government of Virgin Islands in Interests of A.A.*, 34 V.I. 158, 172, 931 F.Supp. 1247, 1255 (D.V.I.App.Div.), *aff'd*, 106 F.3d 385 (3d Cir.1996)(Table). A second transfer hearing was conducted on January 27, 1997, at which time the Family Division made a finding of probable cause that N.G. had committed first degree murder. The court's findings were read into the record. On January 28th, the Family Division issued a written order directing that N.G. be transferred to the Criminal Division. N.G. filed this timely appeal.

## III. JURISDICTION AND STANDARD OF REVIEW

 The Appellate Division has jurisdiction to review the judgments and orders of the Territorial Court in all juvenile cases. V.I. CODE ANN. tit. 4, § 33. The Court has judicially narrowed application of this jurisdiction to include only final judgments and orders. *Government of the Virgin Islands in the Interest of A.M.*, 34 F.3d 153, 156 n. 3 (3d Cir.1994). A juvenile transfer order is considered a final appealable order. *See id.* at 156.

 The Court will uphold findings of fact unless clearly erroneous. 4 V.I.C. § 33. Although the decision to transfer a juvenile to the Criminal Division is " 'committed to the sound discretion of the trial court' " and generally can be reviewed only for abuse of that discretion, the Appellate Division exercises plenary review over any constitutional claims or other questions of law. *Accord Government of the Virgin Islands in the Interest of M.B.*, 122 F.3d 164, 167 (3d Cir.1997) (quoting *United States v. A.R.*, 38 F.3d 699, 701–02 (3d Cir.1994)).

## IV. DISCUSSION

 N.G. was charged with acts of juvenile delinquency which, if committed by an adult, would constitute the felony of first degree murder, subjecting N.G. to the mandatory transfer provisions set forth in 5 V.I.C. § 2508(b)(4). To support a mandatory transfer order, the Family Division of the Territorial Court must find: (1) probable cause that the juvenile committed the alleged act which triggers the mandatory transfer analysis; (2) that the juvenile

was fourteen years of age or older at the time of the alleged offense; and (3) that the crime charged is one demanding mandatory transfer, in this instance, first degree murder. *Id.* § 2508.

■ The mandatory transfer statute does not define "probable cause." It merely states that "after a determination of probable cause," the Family Division shall transfer the juvenile if the other requirements are satisfied. *Id.* § 2508(b). Given that the Legislature did not specifically define the term "probable cause" within the confines of section 2508(b), we assume that it intended the term to have the same meaning as it does in adult criminal proceedings. *Accord Government of the Virgin Islands in the Interest of A.M.*, 34 F.3d 153, 160 (3d Cir.1994). Accordingly, probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man into believing that the (suspect) had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)(quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

To make these determinations, the Family Division must conduct a "full investigation" that will form a firm basis for each of the court's findings. *Kent v. United States*, 383 U.S. 541, 553–54, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). N.G. contends that the required full investigation necessary to support a finding of probable cause that N.G. committed the acts charged did not occur because he could not meaningfully cross-examine the government's witnesses at the second transfer hearing in January, 1997, due to the government's refusal to provide discovery.

### A. Entitlement to Discovery Materials Before the Transfer Hearing

■ As succinctly set forth in the government's brief, "[d]iscovery is not a prop-

er function of a probable cause hearing." (Government's Br. at 9) (citing *United States v. Conway*, 415 F.2d 158, 161 (3d Cir.1969), *cert. denied,* 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970)). Discovery in an adult proceeding is governed by Rule 16 of the Federal Rules of Criminal Procedure,[1] which does not generally permit discovery before a finding of probable cause. We see no reason to distinguish a probable cause determination in a juvenile matter from that in an adult proceeding.

■ N.G. also argues that he was improperly denied exculpatory *Brady* material before the transfer hearing, which he asserts he could have used to defeat the court's finding of probable cause. In *Brady v. Maryland,* the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). N.G. maintains that the government knew or should have known that several witnesses to his fight with Knight reported seeing the appellant's cousin stab Knight and possibly inflict the fatal wound. The government's failure to uncover these witnesses before the transfer hearing, according to the appellant, cannot excuse this alleged *Brady* violation.

The government did not violate its obligations under *Brady*. "There can be no violation of *Brady* unless the Government's non-disclosure infringes upon the defendant's fair trial right.... No denial of due process occurs if *Brady* material is disclosed in time for its effective use at trial." *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir.1984). Since his trial as an adult has been stayed pending resolution of this appeal and he now has the material

---

1. The Federal Rules of Criminal Procedure are applicable in proceedings before the Territorial Court to the extent they are not inconsistent with the Rules of the Territorial Court. TERR. CT. R. 7.

he requested, N.G. will be able to make effective use of any *Brady* material at trial.

### B. Opportunity to Conduct "Meaningful Cross–Examination"

 A juvenile has the right to conduct meaningful cross-examination at a transfer hearing. *See Government of the Virgin Islands in the Interests of A.A.*, 34 V.I. at 170, 931 F.Supp. at 1253; *Government v. Santana*, 9 V.I. 154, 160 (D.V.I.App.Div.1972). Cross-examination, by definition, is limited to the subject matter of direct examination. Therefore, at a probable cause hearing, the issue of probable cause is the only permissible subject for cross-examination. The juvenile at a mandatory transfer hearing should be permitted to question adverse witnesses to probe the credibility of the evidence being presented. This does not mean that the juvenile is entitled to discover the government's case, such as obtaining the names of its witnesses. The juvenile, however, is entitled to expose areas such as bias by exploring the relationship of a witness to the victim. *See Kent*, 383 U.S. at 563, 86 S.Ct. 1045 ("[I]t is precisely the role of counsel to 'denigrate'" submissions and representations made to the court by the government in support of a finding of probable cause in a juvenile transfer hearing.).

Throughout the 1997 hearing, the court permitted N.G.'s counsel to cross-examine the testifying government agent about the credibility of witnesses he relied upon to establish probable cause. For example, N.G.'s counsel asked whether the witness, a police officer with the Homicide Task Force of the Virgin Islands Police Department, had determined that "the witness that gave you the information [concerning the alleged threats made by the appellant] was [Knight's] best friend?" (App. at 31.)

N.G.'s counsel also questioned the officer's opinion of the credibility of other witnesses, *id.* at 33, and whether or not the other witnesses actually were in a position to see exactly what happened between N.G. and Knight, *id.* at 34.[2] We therefore conclude that the Family Division afforded the appellant ample opportunity to conduct meaningful cross-examination.

### C. Findings of Probable Cause

 When granting a motion to transfer a juvenile to the Criminal Division for further proceedings, the Family Division must include a statement of the reasons and considerations prompting the court's decision. *Kent*, 383 U.S. at 560, 86 S.Ct. 1045. This is to inform the appellate court of the basis for the transfer order and to allow for meaningful review of the transfer order. *Id.*

The Family Division's findings, made orally at the January 27th hearing, easily satisfy the requirements of *Kent v. United States*, which require only a "statement" of the reasons supporting the transfer, even though the written transfer order issued on January 28, 1997, did not contain specific findings. (App. at 11.) *Kent* specifically mentions that this statement does not need to be "formal" or "include conventional findings of fact." 383 U.S. at 561, 86 S.Ct. 1045.

At the transfer hearing, the judge read specific findings into the record:

> The Court finds that the Government has brought forth sufficient evidence to have [N.G.] charged with First Degree Murder. Based on the testimony of Detective Phipps alone, we have witnesses placing [N.G.] at the incident with the victim the night before the incident, threats allegedly that [N.G.] made, that [N.G. was] going to kill the victim, both

---

2. N.G. also implicitly challenges the admission of hearsay evidence by stating that the evidence was untrustworthy because it was hearsay and thus cannot be used to support a finding of probable cause. It has been firmly established that "the admission of hearsay to establish probable cause in a juvenile transfer proceeding is constitutionally permissible." *Government of Virgin Islands in Interest of A.M.*, 34 F.3d 153, 160 (3d Cir.1994).

the night and in the morning of the incident on February 1st.

We have witnesses allegedly seeing [N.G.] approach the victim. [N.G.] had a very serious look on [his] face. The witnesses observed [N.G.] again approach the victim, the victim was chanting, singing, and [N.G.] allegedly grabbed the victim around the throat.

The victim died from two superficial stab wounds of the neck, those are superficial, but he did receive two superficial wounds at the back of the neck, because allegedly he was grabbed by [N.G.] around the throat from behind, and he actually died from a knife wound into his left collarbone, which this, which the knife allegedly cut the aorta and his trachea.... After the stabbing [N.G.] allegedly left ... the area with [his] bloody shirt and the knife wrapped in a t-shirt, and [N.G.]...came to the Investigation Unit to essentially turn [himself] in.

(App. at 45–46.) These detailed findings dictated into the record also satisfy this Court's ruling that the Family Division judge

> state the reasons for transfer by making clear and specific findings that the necessary prerequisites for mandatory transfer outlined above and in subsection 2508(b) have been satisfied. Such a written articulation of the reasons for transfer will provide a clear and discernible written record of the judge's findings for review on appeal.

*Government of the Virgin Islands in the Interests of A.A.,* 34 V.I. at 171, 931 F.Supp. at 1253–54.[3]

Here, the Family Division's extensive findings of fact are memorialized in a written transcript of proceedings, which satisfies both *Kent* and *Government of Virgin*

*Islands in Interests of A.A.* by "provid[ing] a clear and discernible written record of the judge's findings for review on appeal." The Family Division's findings in this instance both inform the Appellate Division of the "reasons motivating the waiver" and support a finding of probable cause.

## V. CONCLUSION

A juvenile does not have a right to discovery, including *Brady* material, before a transfer hearing. The minor's rights to discovery do not ripen until *after* a finding of probable cause. The juvenile's right to conduct meaningful cross-examination at the transfer hearing is not thereby diminished, as evidenced by N.G.'s ample opportunity to meaningfully cross-examine witnesses on the only relevant issue of probable cause without first obtaining discovery needed for trial. Furthermore, the Family Division's extensive findings dictated into the record at the transfer hearing provide the Appellate Division with a sufficient record to review the reasons motivating the court's decision to transfer the juvenile.

For these reasons, the Court will affirm the order of the Family Division of the Territorial Court transferring N.G. for further proceedings before the Criminal Division. An appropriate order is attached.

## ORDER

For the reasons set forth in the accompanying memorandum opinion of even date, it is hereby

**ORDERED** that the order of the Territorial Court transferring the appellant, N.G., to the Criminal Division of the Terri-

---

**3.** N.G. contends that the Court's holding in *Government of Virgin Islands in Interests of A.A.* ["*Government ex rel. A.A.*"] requires reversal of the transfer order because the Family Division did not repeat its detailed findings in the written order dated January 28, 1997. The holding of *Government ex rel. A.A.* is not

to be so narrowly construed. Whether the reasons supporting a finding of probable cause are dictated into the record at the hearing or subsequently memorialized in a written order, the end result is the same: a written record which is reviewable on appeal that satisfies the tenets of *Kent v. United States.*

torial Court is **AFFIRMED**. The Clerk shall issue the mandate and close the file.