**A.H., a minor, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2005-64

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 16, 2006

ADAM G. CHRISTIAN, ESQ., St. Thomas, U.S.V.I., *For the Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *For the Appellee.*

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and STEELE, *Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*

## MEMORANDUM OPINION

### (August 16, 2006)

The minor appellant, A.H., appeals an order transferring his case from the Family Division ["Family Division"] to the Criminal Division ["Criminal Division"] of the Superior Court of the Virgin Islands.

## I. FACTS

On June 15, 2005, Tristan Charlier ["Charlier"] and Leon Roberts ["Roberts"], two adult males visiting St. Thomas, Virgin Islands to attend a wedding, were shot and killed. An unidentified witness ["Witness No. 1"] later told officers of the Virgin Islands Police Department ["VIPD"] that A.H. and his brother had committed the murders. On July 2, 2005, the VIPD arrested A.H. and charged him in a nineteen count complaint in the Family Division with two counts of first degree murder, two counts of felony murder, six counts of violations of Virgin Islands gun laws, four counts of attempted first degree robbery, and four counts of first degree assault.

On July 5, 2005, A.H. was brought before the Superior Court for a probable cause hearing. A.H. was represented by counsel. The Superior Court found probable cause for A.H.'s arrest, and remanded him to the Youth Rehabilitation Center on St. Croix. A.H. subsequently pled not guilty to the charges against him.

On July 14, 2005, the Government of the Virgin Islands ["GVI"] moved to transfer A.H. from the Family Division to the Criminal Division, where he would be tried as an adult, pursuant to Virgin Islands law.[1]

On August 9, 2005, the Family Division held a hearing on the GVI's motion to transfer A.H. At the hearing, A.H. was represented by counsel. His mother testified that A.H. was seventeen years of age at the time of the murders and at the time of his arrest.

Detective Mario Stout of the VIPD also testified at the hearing. He testified that he learned of A.H.'s involvement in the murders of Charlier

---

[1] Virgin Islands law requires the Family Division to transfer a minor over the age of fourteen to the Criminal Division of the Superior Court when the minor is charged with murder in the first degree or possession or use of a firearm during a crime of violence. V.I. CODE ANN. tit. 5, § 2508(b)(4).

and Roberts from Witness No. 1. Detective Stout testified that Witness No. 1 had known A.H. and his brother for at least a year, and that Witness No. 1 had witnessed the June 15, 2005, murders from a few feet away.[2] Detective Stout also testified that Witness No. 1 had positively identified A.H. in a photo array as one of the individuals who shot and killed Charlier and Roberts.

On cross-examination, Detective Stout revealed that Witness No. 1 knew A.H. because Witness No. 1 had purchased drugs from him. Detective Stout stated that Witness No. 1 had been near the scene of the alleged crime because he was acquiring food from a trash receptacle outside of a McDonald's restaurant. Detective Stout also testified that Witness No. 1 had received a mental evaluation by the GVI, although Detective Stout did not know the results of that evaluation.

Subsequent to the transfer hearing, but prior to any written opinion of the Family Division, A.H. filed a motion seeking dismissal of the complaint against him. He based this motion on allegations that the hearing had violated his due process rights because: (1) he was not afforded an adversarial transfer proceeding; (2) the GVI failed to disclose exculpatory evidence to him prior to the hearing; and (3) the GVI placed Witness No. 1 into protective custody without informing A.H. or the Court.

In an August 12, 2005, opinion the Family Division found that A.H. was seventeen years old at the time of the alleged crime and at the time of his arrest. The Family Division further found that the eyewitness testimony of Witness No. 1 established probable cause that A.H. had committed a felony. The Family Division also denied A.H.'s motion to dismiss, and it ordered that A.H. be transferred to the Criminal Division. A.H. timely appealed the transfer order.

On appeal, A.H. argues that: (1) the Family Division erred in finding probable cause to charge A.H.; (2) A.H.'s due process rights were violated at the transfer hearing because the GVI failed to provide A.H. with exculpatory information prior to the proceeding; and (3) the transfer

---

[2] There is some discrepancy regarding the distance from which Witness No. 1 viewed the murders. At the July 5, 2005, probable cause hearing, Detective Stout stated that Witness No. 1 was two feet away from A.H. during the commission of the alleged crimes. At the August 9 hearing, however, Detective Stout testified that Witness No. 1 witnessed A.H. take part in the murders from eight feet away.

hearing denied A.H.'s due process rights because A.H.'s cross-examination of Detective Stout was improperly limited.

## II. DISCUSSION

This Court has jurisdiction to review final judgments and orders of the Superior Court. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004) which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction in this Court);[3] Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a. "A juvenile transfer order is considered a final appealable order." *Virgin Islands ex rel. N.G.*, 119 F. Supp. 2d 525, 527 (D.V.I. App. Div. 2000), *aff'd* without opinion at 34 Fed. Appx. 417 (3d Cir. March 28, 2002). The trial court's conclusions of law are subject to plenary review. *Saludes v. Ramos*, 744 F.2d 992 (3d Cir. 1984). Findings of fact are reviewed for whether they are clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985). Constitutional claims are given plenary review. *Warner v. Virgin Islands*, 332 F. Supp. 2d 808, 810, 46 V.I. 251 (D.V.I. App. Div. 2004).

## III. ANALYSIS

### A. Probable Cause

 A.H. has been charged with first degree murder and with using a firearm during a crime of violence. These charges subject A.H. to the mandatory transfer provision of Virgin Islands law, which provides, in pertinent part:

> If a child or adult is charged with an offense which would be a felony if committed by an adult, and the child or adult was fourteen years of age or older at the time of the alleged offense, the Family Division of the Territorial Court, after a determination of probable cause, shall transfer the person for proper criminal proceedings to a court of competent criminal jurisdiction when:
>
> (4) the offense now charged is one of the following offenses, which would be a felony if committed by an adult: murder in the first degree or an attempt to do so; ... possession or use of a firearm in the commission of a crime of violence irrespective of

---

[3] Our jurisdiction in this regard was previously provided under 4 V.I.C. § 33.

whether the minor has been previously adjudicated to be a delinquent.

V.I. CODE. ANN. tit. 5, § 2508(b)(4). To support a mandatory transfer under the Code, the Family Division must find:

> (1) probable cause that the juvenile committed the alleged act which triggers the mandatory transfer analysis; (2) that the juvenile was fourteen years of age or older at the time of the alleged offense; and (3) that the crime charged is one demanding mandatory transfer ... .

*N.G.*, 119 F. Supp. 2d at 528.[4]

█ Probable cause is determined by inquiring into whether "the facts and the circumstances within the arresting officer's knowledge [were] sufficient in themselves to warrant a reasonable person to believe that an offense has been ... committed by the person ... arrested." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).

Detective Stout, who arrested A.H., relied on the testimony of Witness No. 1 to determine whether probable cause existed to effect the arrest. A.H. contends that Witness No. 1's admitted drug use should have rendered him and his testimony unreliable to support a finding of probable cause.

█ The fact that a person is a drug user does not preclude them from being considered a credible witness, especially when subsequent investigation confirms the witnesses statements. See, *e.g., United States v. Austin,* No. 92-10486, 1993 U.S. App. LEXIS 26624, at *7-8 (9th Cir. Oct. 6, 1993) (unpublished) (finding that information provided to the police by an admitted drug user was nonetheless credible because subsequent investigation confirmed the statements); *cf. United States v. Dozier*, 844 F.2d 701, 706 (9th Cir. 1988) (upholding probable cause finding based on coconspirator's statements, which were corroborated by independent police investigation).

█ Witness No. 1 provided the VIPD with A.H.'s name, a description of the murders that included the number of times and the places where

---

[4] A.H. has only challenged the Superior Court's finding of probable cause. He has not challenged the Superior Court's findings regarding the second and third factors for mandatory transfer.

the victims were shot, and other information specific to the crime. Witness No. 1 also stated that he had known A.H. for at least a year, and could recognize him. Subsequent investigation revealed that Charlier and Roberts had been killed in the manner described by Witness No. 1. Additionally, Witness No. 1's descriptions of the victims proved to be accurate. Based upon the information provided by Witness No. 1, the VIPD could have reasonably believed that a murder had taken place, and that an eyewitness had seen A.H. commit one of the murders. Accordingly, the Family Division did not err in finding that A.H.'s arrest was supported by probable cause. *See Wilson*, 212 F.3d at 786 (finding that victim and eyewitness statements to the effect that a robbery had occurred and that the defendants had committed the robbery supported a finding of probable cause for the defendant's arrest).

## B. Due Process and Pre-Hearing Discovery

A.H. argues that his due process rights were violated during the transfer hearing because the GVI did not provide him with exculpatory information prior to the transfer hearing. He contends that this information could have been used to defeat the Family Division's finding of probable cause.

■ "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). *Brady* material must be presented to a defendant, including a minor, prior to trial. *N.G.*, 119 F. Supp. 2d at 528-29.

■ There is no right, however, to receive *Brady* material prior to a probable cause or transfer hearing. *Id.*; *see also Gov't of the V.I. ex rel. A.I.E.*, 120 F. Supp. 2d 537, 545 (D.V.I. App. Div. 2000) (holding that a "juvenile ... has no entitlement to *Brady* materials before the transfer hearing proceeding"). So long as such information is provided to A.H. before the trial, his due process rights will be preserved. *United States v. Starusko*, 729 F. 2d 256, 262 (3d Cir. 1984) ("No denial of due process occurs if Brady material is disclosed in time for its effective use at trial.") (quoting *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983)); *see also N.G.*, 119 F. Supp. 2d at 529 (holding that an appellant's due process rights were not violated when he did not receive *Brady* material before

his transfer hearing because he "will be able to make effective use of any Brady material at trial"). Accordingly, A.H.'s due process rights were not violated by the GVI's failure to provide him with potentially exculpatory information prior to the transfer hearing.

## C. Opportunity to Conduct Meaningful Cross-Examination

A.H. also argues that he was denied due process during the transfer hearing because he was not able to question Detective Stout regarding the results of a mental competency test on Witness No. 1, or about any information inconsistent with Witness No. 1's testimony.

 "A juvenile has the right to conduct meaningful cross-examination at a transfer hearing." *N.G.*, 119 F. Supp. 2d at 529 (citing *Government of the V.I.*, 931 F. Supp. 1247, 1253, 34 V.I. 158 (D.V.I. App. Div. 1996)). Accordingly, a juvenile may question the credibility of the evidence presented at a transfer hearing. *Id.* However, cross examination is limited to the matter of probable cause. *N.G.*, 119 F. Supp. 2d at 529. The right to cross-examine a witness at the transfer hearing "does not mean that the juvenile is entitled to discover the government's case." *Id.*

██ A.H.'s attorney questioned Detective Stout about the credibility of Witness No. 1. During cross-examination, Detective Stout revealed that Witness No. 1 was a drug user, that he ate food from a restaurant's garbage, and that he had undergone a mental capacity examination. The cross-examination drew into question the reliability of Witness No. 1, and was sufficiently meaningful to protect A.H.'s due process rights during the hearing.

## IV. CONCLUSION

For the foregoing reasons, this Court will affirm the Family Court's order transferring A.H. to the Criminal Division of the Superior Court.