**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**DEAN C. PLASKETT, MARC A. BIGGS, and LEROY L. MARCHENA, Defendants**

Criminal No. 2007-60

District Court of the Virgin Islands

Division of St. Thomas and St. John

August 13, 2008

549

550

ARMANDO BONILLA, ESQ., Washington, D.C., *For the government.*

GORDON C RHEA, ESQ., Mount Pleasant, SC, *For the defendant Dean C. Plaskett.*

TRESTON E. MOORE, ESQ., St. Thomas, USVI, *For the defendant Marc. A. Biggs.*

ADRIANE J. DUDLEY, ESQ., St. Thomas, USVI, *For the defendant Leroy L. Marchena.*

GÓMEZ, *Chief Judge*

## MEMORANDUM OPINION

(August 13, 2008)

Before the Court are the motions of Dean C. Plaskett ("Plaskett") and Marc A. Biggs ("Biggs") (collectively, the "Defendants") for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). Additionally, Plaskett moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). For the reasons stated below, the Court will deny the motions for judgments of acquittal and for a new trial.

## I. FACTS

Plaskett was the Commissioner of the Virgin Islands Department of Planning and Natural Resources. Biggs was the Commissioner of the Virgin Islands Department of Property and Procurement.

On November 8, 2007, a grand jury returned a twelve-count indictment against Plaskett and Biggs, alleging that they participated in a scheme involving the issuance of government contracts in exchange for financial kickbacks. Count One charges Plaskett and Biggs with conspiracy to commit theft or bribery concerning programs receiving federal funds and honest services mail fraud. Counts Two through Four charge Plaskett with theft or bribery concerning programs receiving federal funds. Counts Five through Seven charge Biggs with theft or bribery concerning programs receiving federal funds. Count Eight charges Plaskett with conspiracy to obstruct justice. Counts Nine and Ten charge Plaskett with obstruction of justice. Count Eleven charges Plaskett with making a false statement.

Count Twelve charges Plaskett and Biggs with making fraudulent claims upon the government, under Virgin Islands law.

The trial in this matter commenced on February 11, 2008. The parties rested and the matter went to the jury during the third week of trial. During the second day of deliberations, the jury returned a verdict of guilty against Plaskett on Counts Three, Nine, and Ten. Plaskett was acquitted of the other offenses charged against him. Additionally, the jury found Biggs guilty as to Count Six. Biggs was acquitted of the remainder of the charges asserted against him.

The Defendants timely filed post-verdict motions for judgments of acquittal and for a new trial.

## II. DISCUSSION

### A. Rule 29

■ A judgment of acquittal is appropriate under Rule 29 if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt and the verdict is supported by substantial evidence. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). The government may sustain this burden entirely through circumstantial evidence. *Id.*; *see also United States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). "It is not [the Court's] role to weigh the evidence or to determine the credibility of the witnesses." *United States v. Cothran*, 286 F.3d 173, 175 (3d Cir. 2002).

### B. Rule 33

■ When deciding a Rule 33 motion for a new trial, the Court is provided somewhat more discretion than what is afforded under Rule 29. Under Rule 33, the Court may grant a new trial "in the interest of justice." *United States v. Charles*, 35 V.I. 306, 949 F. Supp. 365, 368 (D.V.I.1996). In assessing such "interest," the court may weigh the evidence and credibility of witnesses. *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990). If the Court determines that there has been a miscarriage of justice, the court may order a new trial. *Id.* The burden is on the defendant to show that a new trial ought to be granted. *United States v. Clovis*, Crim. No. 94-11, 1996 U.S. Dist. LEXIS 20808, at *5 (D.V.I. Feb. 12, 1996).

## III. ANALYSIS

### A. Sufficiency of the Evidence

#### 1. Count Six: Theft or Bribery Concerning Programs Receiving Federal Funds

Biggs contends that acquittal is appropriate as to his conviction on count Six because the government presented insufficient evidence at trial to prove that he committed theft or bribery concerning programs receiving federal funds under 18 U.S.C. § 666(a)(1)(B) ("Section 666(a)(1)(B)").

■ To support a conviction for theft or bribery concerning programs receiving federal funds the government must prove that: (1) at the time of the conduct in question the defendant was an agent of a government or an agency thereof; (2) that the government or agency received federal benefits in excess of $10,000 during a one-year period; (3) the defendant accepted or agreed to accept or solicited or demanded something of value from another person; (4) the defendant acted corruptly with the intent to be influenced or rewarded in connection with a transaction of the government or agency; and (5) that the value of such transaction exceeded $5,000. *See* 18 U.S.C. § 666(a)(1)(B); *see also United States v. Cicco*, 938 F.2d 441, 444 (3d Cir. 1991) (listing the elements of the offense).

■■ "As used in criminal-law statutes, [the term] *corruptly* usu[ally] indicates a wrongful desire for pecuniary gain or other advantage." BLACK'S LAW DICTIONARY (8th ed. 2004). As the United States Court of Appeals for the Second Circuit has explained, "[t]he plain language of [Section 666(a)(1)(B)] makes clear that a recipient's knowledge of a donor's intent to influence is insufficient to support conviction. The recipient must take the proffered thing of value 'intending to be influenced.'" *United States v. Ford*, 435 F.3d 204, 214 n. 5 (2d Cir. 2006); *see also United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994) (holding that the term "corruptly," as used in Section 666(a)(1)(B), entails violation of some duty owed to government or to public in general).

■ Here, Count Six specifically charged that "in or about mid-January, 2003," Biggs "corruptly solicited, accepted, and agreed to accept cash payments from Hollis L. Griffin [Director of DPNR from 1999, until 2004], intending to be influenced and rewarded in connection with his official acts in connection with the Coastal Zone Management Contracts."

(Indictment 27, ¶ 30, Nov. 8, 2007.) At trial, the government presented evidence that: Biggs was an agent of the Virgin Islands government during mid-January, 2003; the Virgin Islands government received federal benefits in excess of $10,000 within a one-year period; and that Biggs accepted or agreed to accept cash from Hollis L. Griffin ("Griffin") during mid-January, 2003.

Additionally, Griffin testified at trial that he frequently met with Biggs to discuss how they could make profits through the issuance of local government contracts. Griffin stated that

> [a]t one point . . . Dean Plaskett brought Marc Biggs into my office at the Water Gut Homes, and they came to me and they told me that, you know, Environmental Protection has got a lot —

> . . .

> That Environmental Protection has got a lot of money, and that we should try to find companies that we could give contracts to, and that these people would give us some money from these contracts, kick us back some money.

(Trial Tr. 160, Feb. 12, 2008.) During a subsequent meeting, Plaskett, Biggs, and Griffin identified a contract to perform various work for the Division of Coastal Zone Management ("CZM") as a potential money maker. Finally, the government presented evidence that the value of the CZM Contract was over $5,000.

Making every reasonable inference in favor of the government, a rational jury could find beyond a reasonable doubt that Biggs corruptly accepted cash payments with the intent to be influenced in connection with a government transaction worth over $5,000. *See, e.g., United States v. Flemming*, 223 Fed. Appx. 117, 122-23 (3d Cir. 2007) (holding that the evidence was sufficient to support the defendant's conviction for program fraud because a rational jury could find beyond a reasonable doubt that the defendant corruptly gave a housing authority employee money to influence the employee to expedite payments to the defendant's private company under a government contract) (unpublished).

### 2. Counts Nine and Ten: Obstruction of Justice

Plaskett argues that he is entitled to a judgment of acquittal on Counts Nine and Ten because the government presented insufficient evidence at

trial to sustain a conviction against him for obstruction of justice under 18 U.S.C. § 1512(c)(2) ("Section 1512(c)(2)"). He contends that the government failed to establish a sufficient nexus between the obstructive conduct charged in those counts and an official proceeding.

Section 1512(c)(2) provides:

> Whoever corruptly —
>
> . . .
>
> . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (2002).

■ To sustain a conviction for obstruction of justice under Section 1512(c)(2), the government must prove: (1) that the defendant knowingly; (2) corruptly obstructed, influenced and impeded, or attempted to do so; (3) an official proceeding. *See id.*; *see also United States v. Reich*, 479 F.3d 179, 185-87 (2d Cir. 2007); *United States v. Peel*, 2006 U.S. Dist. LEXIS 71278, *1 (S.D. Ill. Oct. 2, 2006); *United States v. Guardiola Ramirez*, 2006 U.S. Dist. LEXIS 12659, *6 (D. Puerto Rico March 8, 2006).

■ For purposes of Section 1512, the term "official proceeding" includes: "a proceeding before . . . a Federal grand jury," and "a proceeding before a Federal Government agency which is authorized by law . . . ." 18 U.S.C. § 1515(a)(1)(A), (C). While the "official proceeding need not be pending or about to be instituted at the time of the offense," 18 U.S.C. § 1512(f)(1), such proceeding must have been foreseen by the defendant. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707, 125 S. Ct. 2129, 161 L. Ed. 2d 1008 (2005) ("It is . . . one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,' and quite another to say a proceeding need not even be foreseen.").

■ To prove the requisite intent to obstruct, courts have required the government to show that there was a sufficient nexus between the obstructive conduct and the official proceeding. *See Arthur Andersen LLP*, 544 U.S. at 708 (holding that 18 U.S.C. § 1512(b) contains a nexus requirement); *United States v. Aguilar*, 515 U.S. 593, 600, 115 S. Ct.

2357, 132 L. Ed. 2d 520 (1995) (holding that the government must satisfy the nexus requirement to sustain a conviction for a violation of 18 U.S.C. § 1503,[1] whose relevant language is similar to Section 1512(c) (2)); *see also United States v. Reich*, 479 F.3d 179, 186 (2007) (construing Section 1512(c)(2) as containing a nexus requirement). To satisfy the nexus requirement, a defendant's conduct must have "the natural and probable effect of interfering with a judicial or grand jury proceeding that constitutes the administration of justice; that is, the act must have a relationship in time, causation, or logic with the judicial proceedings." *United States v. Vampire Nation*, 451 F.3d 189, 204-06 (3d Cir. 2006) (quoting *United States v. Quattrone*, 441 F.3d 153, 171 (2d Cir. 2006)). "[I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding . . . he lacks the requisite intent to obstruct." *Arthur Andersen LLP*, 544 U.S. at 708.

Plaskett was convicted on Counts Nine and Ten for aiding and abetting Leroy Marchena in obstructing an official proceeding in late December, 2004, and mid-January, 2005. The government presented evidence at trial that in December, 2004, Plaskett and Marchena met with alleged coconspirator Brent E. Blyden ("Blyden") at Marchena's office. During the meeting, the men discussed the investigation of a Virgin Islands government contract that was part of the alleged bribery scheme.

> A: [Marchena] said . . . and there's a problem in terms of there's an investigation; and also, you know, the forgery of documents, that articles of incorporation, and the business license. And we need to find out, you know, how we can resolve this.

(Trial Tr. 207 Feb. 15, 2008.) Blyden further testified that during the December, 2004, meeting, Plaskett instructed Blyden to travel to Atlanta, Georgia to meet with an individual named Barry Bennett ("Bennett") to discuss backdating documents to appear as if they were created in connection with a contract previously awarded to a company called Elite for a project.

---

[1] Title 18 U.S.C. § 1503 subjects to criminal liability one who corruptly "endeavors to influence, intimidate, or impede" an officer or juror or "influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503(a).

Blyden returned from Atlanta on December 31, 2004, and met with Plaskett in early January to discuss the results of the trip. Blyden testified that, during the time period around December, 2004, and January, 2005, he and Plaskett "would often meet and talk about the potential of [the investigation] going up to the Federal Government, and it's really getting to be, you know, nasty . . . ." (*Id.* at 225.)

Bennett also testified that, in January, 2005, he traveled from Atlanta to St. Thomas, where he met with Plaskett and Marchena at Marchena's home. During that meeting, Plaskett asked Bennett whether he could recreate and back-date certain documents related to a contract connected with the bribery scheme.

The evidence further established that, in early February, 2005, federal agents interviewed Plaskett in connection with an investigation of the alleged bribery and kick-back scheme. Additionally, a federal grand jury proceeding was conducted on the matter in mid-March, 2005.

A rational jury believing the government's evidence could find that Plaskett met with Blyden and Bennett in order to cover up the alleged bribery and kickback scheme. Viewed in the light most favorable to the government, the evidence also shows that Plaskett knew at the time of those meetings that a federal investigation and grand jury proceeding were likely forthcoming. A rational jury could find beyond a reasonable doubt that Plaskett knowingly attempted to corruptly impede or obstruct an official proceeding in December, 2004, and in January, 2005. Accordingly, the evidence adduced at trial was sufficient to sustain Plaskett's convictions on Counts Nine and Ten of the indictment.[2] *See, e.g., United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007) (holding that evidence which allowed the jury to conclude that the defendant corruptly attempted to withhold information from, or put misinformation before, the grand jury was sufficient to sustain a conviction under Section 1512(c)); *United States v. Lucas*, 499 F.3d 769 (8th Cir. 2007) (holding that evidence that the defendant asked two people

---

[2] To the extent Plaskett argues that the federal agency investigation does not constitute an official proceeding under Section 1512(c)(2), the Court is unpersuaded. Indeed, the plain language of the statute forecloses Plaskett's interpretation. *See, e.g., United States v. Kelley,* 308 U.S. App. D.C. 314, 36 F.3d 1118, 1128 (D.C. Cir. 1994) ("[T]he grand jury proceeding and the Inspector General's investigation constituted 'official proceedings' within the meaning of [Section] 1512."); *United States v. Gonzalez,* 922 F.2d 1044, 1055-56 (2d Cir. 1991) (holding that a Drug Enforcement Agency investigation was an "official proceeding").

to claim ownership of firearm found in the apartment where he was arrested, and that each of them understood the request to be in earnest, was sufficient to support conviction for attempted obstruction of justice under Section 1512(c)).

## B. New Trial

Plaskett asserts that the interests of justice favor granting him a new trial for four separate reasons.

### 1. Disclosure of Impeachment or Exculpatory Material

First, Plaskett claims that the government violated his due process rights by withholding information regarding Griffin's enrollment in drug treatment programs during two different periods. He asserts that the drug treatment information was finally disclosed in a letter dated February 1, 2008. Plaskett further complains that the government failed to provide the medical records associated with Griffin's drug treatment sessions.

In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court of the United States held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." *Id.* at 87 (quotation omitted). In *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), the Supreme Court extended *Brady's* disclosure requirement to include evidence that may be used to impeach the credibility of a government witness. *See id.* at 154.

*Brady* material must be presented to a defendant prior to trial. *See A.H. v. Gov't of the V.I.*, 48 V.I. 394, 400 (D.V.I. App. Div. 2006). While there is no specific time for disclosing *Brady* material, "[n]o denial of due process occurs if *Brady* material is disclosed in time for its effective use at trial." *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984). Additionally, *Brady* does not compel the government "to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." *Id.*

Assuming that Plaskett was entitled under *Brady* and *Giglio* to receive information regarding Griffin's drug treatment programs, he had ample time to review the February 1, 2008, letter before trial. Further, Griffin testified that he had told Plaskett about his drug addiction prior to

the trial. Because the February 1, 2008, letter was disclosed in time for its effective use at trial, and because the gist of the information contained therein was available to the defense before that time, the disclosure of this document did not constitute a *Brady* violation. *See, e.g., United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983) ("The *Brady* material in this case was information that appellees could use on cross-examination to challenge the credibility of government witnesses. For that type of material, we think appellees' right to a fair trial will be fully protected if disclosure is made the day that the witness testifies."); *A.H.*, 48 V.I. at 400 (refusing to find a *Brady* violation "[s]o long as the information is provided to [the defendant] before the trial . . . ."); *Felix v. Gov't of the V.I.*, 47 V.I. 573, 583 (D.V.I. App. Div. 2005) (concluding that the defendant was not entitled to a new trial based on an alleged *Brady* violation).

██ Plaskett also argues that the government's failure to provide the medical records associated with Griffin's drug treatment constituted a *Brady* violation. However, the Court has already found that no *Brady* violation occurred with respect to the disclosure of information about Griffin's drug treatment. The Court is unpersuaded that the details of Griffin's drug treatment were relevant or material to Plaskett's defense. Indeed, the Court finds that level of detail to be immaterial. Beyond being immaterial, it could lead to the presentation of evidence that wastes time, which would only be relevant if this were a mini trial on the issue of Griffin's drug treatment. Most assuredly, that was not the issue on trial. As such, the government's failure to produce Griffin's medical records was not a *Brady* violation.[3]

### 2. Exclusion of Recorded Conversations

Second, Plaskett contends that a new trial is required because of the exclusion of two recorded telephone conversations between Plaskett and Griffin. Plaskett attempted to introduce the entirety of these calls on February 13, 2008, and again on February 21, 2008. The Court, however, held that only portions of the recordings were admissible. Plaskett chose not to present edited versions of the calls.

---

[3] The Court also notes that Plaskett was allowed broad leeway during trial in his cross-examination of Griffin on the issue of his time in the drug treatment programs.

Plaskett's Rule 33 motion restates the arguments he made at trial in support of the admission of the two conversations. After weighing the probative value of the calls in question against the risk of unfair prejudice, confusion, delay, and judicial economy,[4] the Court declined to admit the portions of the recordings. For the reasons more fully stated on the record at the trial in this matter, the Court now reaffirms these findings.

### 3. Bill of Particulars

The third basis offered by Plaskett in support of his motion for a new trial relates to the January 30, 2008, order entered by the United States Magistrate Judge denying Plaskett's pretrial motion for a bill of particulars.

■■ When a Magistrate Judge resolves a non-dispositive pretrial matter such as a motion for a bill of particulars, "[a] party may serve and file objections to the order within 10 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to." FED. R. CIV. P. 72(a). Here, Plaskett failed to timely object to the Magistrate Judge's order denying the motion for a bill of particulars. Accordingly, Plaskett is precluded from raising that issue for the first time in the instant motion. *See id.*

Moreover, even assuming that Plaskett's challenge to the January 30, 2008, order had been timely, it would not entitle him to a new trial.

■■ "A bill of particulars is a 'formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor[.]' " *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (quoting BLACK'S LAW DICTIONARY 177 (8th ed.2004)) (alteration in original). "The purpose of a bill of particulars is to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." *Id.* (quotation omitted). To show entitlement to a bill of particulars, a defendant must establish actual surprise at trial and demonstrate prejudice to his substantial rights. *See id.* at 772 ("Only where an indictment significantly impairs the defendant's

---

[4] *See* FED. R. EV. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

ability to prepare his defense or is likely to lead to prejudicial surprise at trial[,] will we find that a bill of particulars should have been issued." (internal citations and quotations omitted)).

■ The indictment in this matter contained forty pages of detailed allegations involving Plaskett, including the approximate location, month, and year of the conduct at the heart of each count. The charges in the indictment were more than sufficient to apprise Plaskett of the nature of the offense he was required to defend. Furthermore, Plaskett has failed to demonstrate actual surprise at trial or prejudice to his substantial rights as a result of the denial of his request for a bill of particulars. *See, e.g., Urban*, 404 F.3d at 772 (holding that a bill of particulars was inappropriate because, *inter alia,* the indictment provided more than enough information to allow Appellants to prepare an effective trial strategy); *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975) (holding that the defendant was not entitled to a bill of particulars where, *inter alia,* the defendant failed to "specif[y] any prejudice to his case or show[] what he would have done differently had he" obtained the bill of particulars).

### 4. Bennett's Testimony

Finally, Plaskett argues that he is entitled to a new trial based on the admission of certain statements made by Bennett in the presence of the jury. Bennett testified at trial regarding an occasion when he met with Marchena, to discuss contracts related to the alleged bribery and kick-back scheme. During that conversation, Bennett stated:

> Mr. Marchena said, "The boys are in trouble." I inquired, "What does that mean?" He said, he said, "Commissioner Dean Plaskett. He should not have hired that Hollis, because Hollis is a loose cannon. He's a junky and he's dangerous."

> [PROSECUTOR]: What else, if anything, did Mr. Marchena say about Mr. Hollis at that meeting?

> A: He said, "He's dangerous, and they need to get rid of him." Then he turned to me and asked, Do I know anyone who could get rid of Hollis.

(Trial Tr. 303-04, Feb. 14, 2008.) The Court initially sustained the Defendants' objections to the above testimony on grounds that its probative value to the corruption charges in this case was outweighed by the undue prejudice to Plaskett caused by the admission of such testimony regarding a possible plot to kill Griffin. The Court also immediately instructed the jury to disregard Bennett's last statement in its entirety. However, the Court reversed its ruling the following day, reasoning that, though Bennett's testimony likely caused some prejudice, it was not unfairly prejudicial. At that time, the Court gave the following instruction to the jury:

> Before we resume with that examination, there was a ruling that the Court made yesterday, where the Court had instructed you to disregard a statement that Mr. Bennett had made. I think it was the last piece of evidence that came in before we adjourned for the day.
>
> The Court has reversed its ruling, and you may consider that information, but with this very important limiting instruction.
>
> You may only consider that information with respect to charges in the indictment as against Mr. Marchena. That is, the last statement that Mr. Bennett made that he attributed to Mr. Marchena may only be considered with respect to Mr. Marchena for the charges in the indictment.
>
> There is no charge in the indictment for any homicide, any attempted homicide, and you may not, in fact you are prohibited from having that enter any consideration, because there's no such charge in the indictment.
>
> You may only consider it for the charge in the indictment with respect to Mr. Marchena. You may not consider that statement with respect to any other defendant who is before you.

(Trial Tr. 21-22, February 15, 2008.)

Again, Plaskett's arguments regarding the admission of Bennett's testimony parrots those he made during trial. For the same reasons enunciated at trial, the Court reaffirms its finding that the testimony in question was admissible.

In sum, none of the grounds asserted by Plaskett show that the interests of justice require granting him a new trial.

## IV. CONCLUSION

Base on the foregoing, the Court will deny the motions of Plaskett and Biggs for judgments of acquittal. The Court will also deny Plaskett's motion for a new trial.[5] An appropriate Order follows.

---

[5] Biggs has filed a motion requesting "that the Court grant a conditional new trial in the event any post-verdict judgment of acquittal on Count VI of this action is reversed." (Biggs' Mot. for a New Trial 3, May 28, 2008.) Because the Court has declined to enter a post-verdict judgment of acquittal on Count VI, Biggs' motion will be denied as moot.